**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 92-1147
_____

CRYSTAL CAMMACK MEDINA,

                                        Plaintiff-Appellant,

VERSUS

ANTHEM LIFE INSURANCE COMPANY,
f/k/a American General Group Insurance Co.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

(January 28, 1993)

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Crystal Cammack Medina sought to amend her complaint to add claims for recovery of extracontractual and punitive damages from her insurance carrier, Anthem Life Insurance Company ("Anthem"), under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). She also sought recovery from Anthem of certain payments she had made to one of her doctors. The district court refused to find that section 502(a)(1)(B) allows extracontractual and punitive relief and also refused to grant Medina recovery of other payments because

she failed to exhaust administrative remedies.  We affirm.

I.

Medina works for Credit Finance Corporation, which is insured by Anthem, which presently insures Medina.  In January 1988, Medina began a course of dental treatments during which her doctor submitted a request to Anthem for predetermination of a dental procedure.  Anthem's claim committee reviewed the request, concluded that sufficient evidence did not exist to prove the medical necessity of the procedure, and refused to pay any benefit. Medina's doctor submitted the request again in 1990; Anthem's claim committee further reviewed the request and once again reached the same conclusion.

In April 1990, Medina sought a second opinion from another doctor, who recommended a different procedure.  Anthem's claim committee still determined that it would not cover the procedure. In June, Medina's attorney wrote to Anthem seeking to convince Anthem to approve the new procedure.  Anthem sent Medina's records to the Medical Review Institute of America for an independent evaluation.  When the institute recommended going forward with the procedure, Anthem approved the procedure on August 16, 1990.

The next day, Medina brought suit against Anthem in state court, seeking $10,035 as the cost of treatment, $50,000 for pain and suffering and mental anguish, and $500,000 in punitive damages. Anthem removed the case to federal court.

Medina then filed an amended complaint that acknowledged that

ERISA preempts her state law remedies. She requested that the court clarify her rights to future benefits, enjoin Anthem's "acts and practices," and award her costs and attorneys' fees.

On October 16, 1991, Medina sought leave to file a second amended complaint to add a claim for extracontractual and punitive damages based upon Anthem's handling of her claims. The magistrate judge refused to allow Medina to amend her complaint, finding that ERISA precludes the award of extracontractual and punitive relief.

On November 18, 1991, Anthem moved to dismiss the complaint for failure to exhaust administrative remedies. Anthem argued that it had paid all claims that Medina had submitted in accordance with its policy. All that remained was a disputed $1,363.20 that Medina averred to have paid her doctor for the latest procedure she had undergone. Anthem asserted that Medina never submitted proper documentation to Anthem's claims department, so Anthem had no obligation to reimburse Medina. The magistrate judge agreed and dismissed Medina's complaint for failure to exhaust administrative remedies.

II.

We turn first to Medina's contention that the magistrate judge erred in refusing to allow Medina to amend her complaint to add a claim for extracontractual and punitive damages. Medina urges us to develop a body of federal common law to supplement the express provisions of ERISA, which include no mechanism for awarding extracontractual or punitive damages. Joining the Seventh and

3

Eleventh Circuits, we decline this invitation.

ERISA section 502(a) is the civil enforcement provision of the statute. It provides that

> [a] civil action may be brought ))
>
> (1)  by a participant or beneficiary ))
>
>             . . .
>
>           (B)   to recover benefits due to him under the terms
>                 of his plan, to enforce his rights under the
>                 terms of the plan, or to clarify his rights to
>                 future benefits to under the terms of the plan
>                 . . . .

The plain language of this statute does not mention recovery of extracontractual or punitive damages. Nothing in the statute instructs us to fashion a federal common law remedy to grant plaintiffs the right to recover punitive or extracontractual damages. Nevertheless, Medina asks us to do just that.

Medina points to legislative history that indicates a willingness on the part of Congress to allow federal courts to mold a federal common law of ERISA. The Conference Report describing ERISA section 502(a) states that a plan beneficiary may bring a civil action

> to recover benefits under the plan which do not involve
> application of the title I provisions . . . [and suits]
> may be brought not only in U.S. district courts but also
> in State courts of competent jurisdiction. All such
> actions in Federal or State courts are to be regarded as
> arising under the laws of the United States in similar
> fashion to those brought under section 301 of the Labor-
> Management Relations Act of 1947.

H.R. Conf. Rep. No. 1280, 93d Cong., 2d Sess. 327, reprinted in 1974 U.S.C.C.A.N. 4639, 5107. As late as 1989, the House Budget Committee "reaffirmed the authority of the federal courts to shape

4

legal remedies to fit the facts and circumstances of the cases before them, even though those remedies may not be specifically mentioned in ERISA itself." Report of the Comm. on the Budget, House of Rep., 101st Cong., 1st Sess. 55-56 (1989).

Unfortunately for Medina, Congress has had almost two decades to enact its putative intent into law and has not done so. Had Congress intended to develop ERISA remedies additional to the ones it specifically crafted, it has had ample opportunity to enact such legislation. Since Congress has not translated its intent into law, we are loathe to take this initiative on our own.

In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 52 (1987), the Court considered whether Congress meant for the civil enforcement provisions of section 502(a) to be the exclusive remedy for beneficiaries. While the Court directed its opinion to the question of whether ERISA preempts a state law claim for improper processing of disability benefits, and decided that ERISA did preempt, it also noted that the text of the statute argues "strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." Id. at 54. The Court concluded that the "`carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" Id. (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1983)).

In Russell, 473 U.S. at 144, the Court also addressed section

5

502(a)(1)(B). Although the issue at bar in that case was whether a fiduciary to a plan may be held liable for extracontractual or punitive damages under ERISA section 409(a), the Court turned to section 502(a)(1)(B) for insight by analogy. Id. It noted that since that section "says nothing about the recovery of extracontractual damages . . . there really is nothing at all in the statutory text to support the conclusion" that the statute intended to give "rise to a private right of action for compensatory or punitive relief." Id. The Court held that Congress did not intend for section 409(a) to include any relief outside of that expressly authorized by the statute. Id.

Medina points out that the Court more recently has addressed this issue in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 111 S. Ct. 478, 486 (1990). In a case once more holding that ERISA preempts state law claims for damages for wrongful discharge, the Court mentioned in dicta that "there is no basis in § 502(a)'s language for limiting ERISA actions to those which seek `pension benefits.' It is clear that the relief requested here [compensatory and punitive damages] is well within the power of federal courts to provide." Id.

Both the Seventh and Eleventh Circuits have considered Ingersoll-Rand and nevertheless have refused to fashion an extracontractual or punitive remedy under section 502(a). In McRae v. Seafarers' Welfare Plan, 920 F.2d 819, 821 n.7 (11th Cir. 1991), Judge Wisdom, sitting by designation, explained the Ingersoll-Rand dicta as follows:

6

We do not interpret these statements to mean that the remedies which the plaintiff in Ingersoll-Rand was seeking )) future lost wages, mental anguish and punitive damages )) are necessarily available under ERISA § 502(a). The Supreme Court was stating that federal law provides relief for ERISA actions other than those that seek to recover pension benefits, such as the plaintiff's cause of action for wrongful termination. The Supreme Court is not holding that the specific remedies this plaintiff had sought under state law are necessarily the remedies that will be afforded him should he be granted relief under ERISA § 502.

The court then went on to rely upon the reasoning in Russell to hold that section 502(a)(3) precludes extracontractual remedies. Id. at 822. It refused to "create a federal common law of remedies for the benefit of the plaintiff on the sole authority of the House Committee Report." Id. at 823.

Similarly, in Harsch v. Eisenberg, 956 F.2d 651, 660 (7th Cir.), cert. denied, 113 S. Ct. 61 (1992), the court dealt with the Ingersoll-Rand dicta by declaring,

We are not rash enough to believe that the Court intended to overrule settled law in most of the circuits, as well as narrowly limit )) if not overrule )) its own decision in Russell in such an off-hand manner . . . . We will continue to doubt the availability of extracontractual damages under ERISA until a more plausible signal reaches us from above.

The court held that neither extracontractual nor punitive damages were available under section 502(a)(1)(B). Id. at 660-61.[1]

We join the other circuits that have held that section 502(a)(1)(B) does not allow the recovery of extracontractual or punitive damages. Like the court in Harsch, we are reluctant to

_____

[1] See also Reinking v. Philadelphia Life Ins. Co., 910 F.2d 1210, 1219 (4th Cir. 1990) (denying claim for extracontractual damages for emotional distress).

believe that the Supreme Court intended us to create a body of federal common law based upon an off-hand statement in Ingersoll-Rand. The more direct language in Pilot Life, 481 U.S. at 54, and Russell, 473 U.S. at 144, shows that the Court felt that the statutory enforcement scheme Congress crafted for ERISA in section 502(a) did not include a private remedy for extracontractual and punitive damages. Without explicit instructions from Congress, we are bound to the plain language of the statute that limits suits to the terms of the plan at issue, rather than arbitrarily extending its scope to include suits for extracontractual and punitive damages. The magistrate judge correctly refused to allow Medina to amend her complaint to include a claim for extracontractual and punitive damages under section 502(a)(1)(B).

### III.

We turn next to the issue of whether the magistrate judge properly dismissed Medina's claim for failure to exhaust administrative remedies. We first note that Medina's brief admits that Anthem has paid all benefits due her in full. The only possible claim that might remain is the disputed bill for $1,363.20.

On July 11, 1991, Medina answered interrogatories put to her by Anthem. In answer to Interrogatory No. 11, Medina claimed that Anthem owed her $1,363.20 for a medical bill that Medina had paid and for which Anthem had not reimbursed her.

In its motion to dismiss for failure to exhaust administrative

remedies, Anthem responds that it refused to reimburse Medina because she never filed any documentation with Anthem's claims department showing that she had paid the bill. Anthem asserts that it cannot process a claim unless it has received that claim and that it maintains a reasonable claim submission policy that Medina has ignored. Anthem assures us that if Medina takes the initial step of submitting a claim, it will calculate her benefits accordingly.

As the magistrate judge noted, we have fully endorsed the prerequisite of exhaustion of administrative remedies in the ERISA context.[2] One of the policies underlying the exhaustion requirement was Congress's desire that ERISA trustees, not federal courts, be responsible for their actions so that not every ERISA action becomes a federal case. Denton, 765 F.2d at 1300.

We find that Medina has not exhausted her administrative remedies regarding the unpaid $1,363.20 bill. Medina has never filed a claim for the disputed sum. She obviously knows how Anthem's claims procedure operates, as she previously has filed claims for which Anthem reimbursed her. Medina may not make her first claim for the unpaid $1,363.20 in this lawsuit but must follow proper procedures in filing a claim with Anthem. Since she has not exhausted her administrative remedies, the magistrate judge

---

[2] See Simmons v. Willcox, 911 F.2d 1077, 1081 (5th Cir. 1990) (ERISA claimant who failed to file claim with insurance company failed to exhaust administrative remedies, so no cause of action existed); Meza v. General Battery Corp., 908 F.2d 1262, 1279 (5th Cir. 1990) (plaintiff may not make initial claim for benefits in a lawsuit); Denton v. First Nat'l Bank, 765 F.2d 1295, 1303 (5th Cir. 1985) (Congress intended ERISA claimants to exhaust administrative remedies before resorting to federal courts).

correctly dismissed her complaint.

## IV.

In summary, we refuse to fashion federal common law that would allow recovery of extracontractual and punitive damages under ERISA section 502(a)(1)(B). We also find that Medina failed to exhaust her administrative remedies by failing to file a claim with Anthem for the disputed $1,363.20. Consequently, we AFFIRM the judgment of dismissal.