Elton E. **DOTSON** and Alrethia Dotson

v.

**UNITED STATES of America.**

Civ. A. No. G–94–535.

United States District Court,
S.D. Texas,
Galveston Division.

Feb. 15, 1995.

**912**

Phyllis J. Cohen, Woodard Hall & Primm, Houston, TX, Stephen L. Hester, Washington, DC, John G. Jacobs, Plotkin & Jacobs, Chicago, IL, Roslyn M. Litman, Litman Litman Harris & Brown, Pittsburgh, PA, for plaintiffs.

Michael D. Powell, Gregory S. Garland, Dept. of Justice, Tax Div., Dallas, TX, for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

This is an action brought by Plaintiffs Elton E. Dotson and Alrethia Dotson ("the Dotsons") against the Internal Revenue Service ("IRS") for the refund of income and social security taxes formerly paid by the Dotsons and now claimed by them to have been paid on a nontaxable settlement amount. Before the Court now are Cross-motions for Summary Judgment brought by both Plaintiffs and Defendant. For the reasons stated below, the Court finds that the Dotsons' Motion for Summary Judgment is groundless and should be **DENIED,** and Defendant's Motion should be **GRANTED.**

### 1. Background

This case arises out of a settlement payment in class action suits brought in 1981 and 1982 by Robert Gavalik and Albert Jakub against Continental Can Company ("Continental") for violations of § 510 of the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1140 et seq. ("ERISA"). See Gavalik v. Continental Can Co., 812 F.2d 834 (3rd Cir.1987), cert. denied sub nom. Continental Can Co. v. Gavalik, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Plaintiffs alleged that Continental Can had undertaken a systemic plan to reduce its pension liabilities by terminating as many employees as possible before they gained sufficient service to vest in special pension benefits. Continental Can was ultimately found to have executed its plan through a sophisticated computer program known as the "Bell System," where "Bell," with its letters reversed, stood for "Let's Limit Employee Benefits" or "Lowest Level of Employee Benefits." See id. at 840.

These suits were consolidated, and a single class was certified. The trial was bifurcated, and the issue of liability was tried by, and judgment was entered in favor of, Continental. The Third Circuit determined that Continental had, in fact, violated ERISA, and it therefore reversed and remanded the action for further proceedings. Gavalik, 812 F.2d at 866.

In 1983, Cecil McLendon also filed a class action against Continental, alleging violations of § 510 of ERISA and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., ("RICO"). See McLendon v. Continental Group, Inc., 602 F.Supp. 1492 (D.N.J.1985). The issue of liability under ERISA was tried, and the District Court found in favor of Plaintiffs. McLendon v. Continental Group, Inc., 749 F.Supp. 582 (D.N.J.1989). The trial court then appointed a Special Master, Professor George L. Priest of the Yale Law School, to assist the parties in determining the remaining ERISA issues.

In 1989 the Gavalik/Jakub case was transferred to the United States District Court for the District of New Jersey and was consolidated with the McLendon case. McLendon v. Continental Group, Inc., 802 F.Supp. 1216 (D.N.J.1992). A settlement agreement was reached under the supervision of Special Master Priest in which Continental agreed to pay $415 million to the members of the class. Of this amount, the Dotsons received an award of $89,754, $19,877 of which was contributed to a qualified pension fund, and $5,004.65 of which was paid as the employer's

share of FICA and FUTA liabilities. From the remaining $64,872.35, $15,361.93 was withheld for income taxes, and $4,381.65 was withheld as the employee's share of FICA.

In April of 1993, the Dotsons filed their Individual Income Tax Return (Form 1040), in which they included the amount of $64,872.35 as "wages" from the settlement amount. However, in December of 1993, the Dotsons filed an Amended Individual Income Tax Return (Form 1040X) for the year 1992, in which they *excluded* the $64,872.35 earlier claimed as "wages." As a result, the Dotsons claim that they are owed a refund in income taxes of $19,485. They filed a Claim for Refund and Request for Abatement (Form 843) of FICA taxes in the amount of $1,107.65 for the year 1992, asserting that the settlement amount was not "wages" for FICA purposes. The IRS denied these claims for refunds, and on September 2, 1994, the Dotsons brought the instant suit to recover the amounts they claim are owed to them.

### 2. *Standard of Review*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, summary judgment should not be granted if the evidence indicates that a reasonable factfinder could find in favor of the nonmoving party. *Id. See also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, the weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record]

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue for trial.*" *Matsushita, supra,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)).

### 3. *Analysis*

Section 61(a) of the Internal Revenue Code of 1986 ("Code") defines the term "gross income" to include income from whatever source derived. The definition of gross income under § 61(a) is therefore of a very broad sweep and includes any accession to a taxpayer's wealth. *Robinson v. Commissioner,* 102 T.C. 116, 125, 1994 WL 26303 (1994). Exclusions from gross income are matters of legislative grace and are construed narrowly in order to maximize the taxation of any accession to wealth. *Id.* Accordingly, any gain in wealth is prima facie includable in gross income unless a narrowly construed exclusion clearly directs otherwise. *Id.*

One of those exclusions is found in § 104(a) of the Code, which provides that "gross income does not include . . . any amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." Treasury Regulations (26 C.F.R.). Section 1.104–1(c) provides that the "term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit

or action based upon tort or tort-type rights, or through a settlement agreement entered into in lieu of such prosecution." Accordingly, damages received through settlement of a lawsuit are excludable from gross income *only* if the damages were received on account of a tort-like personal injury. *Robinson*, 102 T.C. at 125.

■ Not surprisingly, the Dotsons argue in this case that the amounts they received under the settlement of the *Continental Can* class action qualifies as a "tort-like" exclusion from income for tax purposes. In one sense, they are indisputably correct. The record in this case is absolutely clear that Special Master Priest unequivocally *thought* that the settlement award included significant "tort-like" elements. Indeed, there is evidence that a settlement was reached in the underlying class action only because the Defendants in that case feared that they would be liable for punitive damages if they failed to settle.

In his Report and Recommendation, Professor Priest summarized the hearings he had undertaken in this matter, and he emphasized that, in his interpretation, the Supreme Court's ruling in *Ingersoll–Rand Company v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), made clear that ERISA remedies were not limited to contractual damages, but made mental anguish, emotional distress, and punitive damages available under § 510 of ERISA.[1] (See Plaintiffs' Motion for Summary Judgment, at 10). The Special Master then proceeded to fashion the double remedy of a "Basic Award," which included compensation for dignitary injuries, and an "Earnings Impairment Additur," which compensated lost earn-

ings capacity. (See id. at 13). Based on this description of their settlement award, the Dotsons argue that the money in dispute in this matter was awarded for a personal injury and is, therefore, exempt from "gross income" under § 61(a) of the Code because it is a "tort-like" remedy.

This Court disagrees and finds the Dotsons' claims to be utterly groundless as a matter of law. ERISA § 502(a), which forms the civil enforcement statute in dispute in this matter, provides:

A civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

29 U.S.C. § 1132. It is very clear that § 502(a) does *not* allow the recovery of extracontractual or punitive damages in this Circuit. In *Medina v. Anthem Life Insurance Company*, 983 F.2d 29, 32 (5th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 66, 126 L.Ed.2d 35 (1993), the Fifth Circuit clearly stated that it would follow the Seventh and Eleventh Circuits in forbidding such theories of recovery under ERISA.[2] Indeed, it is almost inconceivable to this Court how the Plaintiffs in this case could argue that *Medina* allows the instant suit to be brought in good faith. Although Plaintiffs would undoubtedly contend that the Supreme Court's ruling in *Ingersoll–Rand* made extracontractual damages available *at the time this award was given*, it is clear under *Medina* that such damages have never been available in this Circuit.[3]

---

1. Section 510 provides:
   "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." 29 U.S.C. § 1140.

2. "[T]he [Supreme] Court felt that the statutory enforcement scheme Congress crafted for ERISA in § 502(a) did not include a private remedy for extracontractual and punitive damages. Without explicit instructions from Congress, we are

bound to the plain language of the statute that limits suits to the terms of the plan at issue, rather than arbitrarily extending its scope to include suits for extracontractual and punitive damages." *Id.*

3. Plaintiffs do not argue, and there is no basis for such an argument, that this Court is bound by the law applicable in the Third Circuit, where the underlying settlement award was fashioned. The doctrine of res judicata clearly does not apply to this case in any manner, and the independent cause of action that forms the basis of the instant suit occurred entirely within the jurisdiction of the Galveston Division of the United States District Court for the Southern District of Texas.

Although the Court believes that *Medina* quickly disposes of the issue at hand, it also believes that the Plaintiffs' confusion over the proper application of *Ingersoll–Rand* merits some further discussion. That case involved an appeal from the Texas Supreme Court on the question of whether or not a state wrongful discharge statute could operate to limit an employer's right to terminate an employee at will, which is the presumptive employment doctrine in Texas. The Texas Supreme Court held that the Plaintiff had stated a valid cause of action under the Texas statute, but the Supreme Court disagreed.

The Plaintiff in the state-court suit had sought compensatory and punitive damages under tort and contract theories for being fired several months before (he believed) his pension rights would have vested. In holding that this state-law action was completely preempted by ERISA, Justice O'Conner commented in dicta at the end of her opinion that "there is no basis in § 502(a)'s language for limiting ERISA actions to only those which seek "pension benefits." It is clear that the relief requested here is well within the power of federal courts to provide. Consequently, it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits." *Ingersoll–Rand,* 498 U.S. at 145, 111 S.Ct. at 486.

Special Master Priest took this language to mean that extracontractual damages are available under ERISA, and a number of courts have followed this same reasoning. *See Pegg v. General Motors Corp.,* 793 F.Supp. 284 (D.Kan.1992); *Blue Cross and Blue Shield of Alabama v. Lewis,* 753 F.Supp. 345 (N.D.Ala.1990); *McDonald v. Artcraft Electric Supply Co.,* 774 F.Supp. 29 (D.D.C.1991). Appellate Courts, however, have generally not adopted this view of *Ingersoll–Rand. See Harsch v. Eisenberg,* 956 F.2d 651 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992); *McRae v. Seafarers' Welfare Plan,* 920 F.2d 819 (11th Cir.1991); *see also O'Neil v. Gencorp, Inc.,* 764 F.Supp. 833 (S.D.N.Y.1991).

The Supreme Court itself eliminated any confusion on this matter in the recent ruling of *Mertens v. Hewitt Assocs.,* —— U.S. ——, ——, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993), in which Justice Scalia clearly stated that § 502(a)'s express reference to "other appropriate equitable relief" was limited to traditional notions of equitable relief and did not encompass compensatory or punitive damages. In doing so, the Court nowhere gave any indication that *Ingersoll–Rand* posed any impediment to this view or that even the most basic attempt at reconciling that earlier decision was required to reach the result in *Mertens.* Based on this evidence, this Court believes that it was never the Supreme Court's intention in *Ingersoll–Rand* to allow the expansive reading of § 502(a)'s remedies that Plaintiffs would have the Court adopt.

This view is reinforced by the often-noted fact that Justice O'Conner's comments in *Ingersoll–Rand* are mere dicta that occur at the very end of her opinion. It would be remarkable, indeed, if a settled body of law on ERISA remedies could be disposed of in such a summary manner. While it is true that Congress has stated that federal courts have the power "to shape legal remedies to fit the facts and circumstances of the cases before them, even though those remedies may not be specifically mentioned in ERISA itself, Report of the Committee on the Budget, House of Representatives, 101st Congress, 1st Sess. 55–56 (1989), it is equally clear that Congress has never specifically crafted such provisions. In turn, the Courts have been reluctant to fashion such remedies on their own. Indeed, the Supreme Court noted in 1987 that the text of ERISA argues strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 54, 107 S.Ct. 1549, 1556–57, 95 L.Ed.2d 39 (1987). *Mertens* has made that view definitive.

This Court believes that much of the confusion that followed the *Ingersoll–Rand* decision is based on a fundamental misinterpretation of Justice O'Conner's comments quoted above. It is clear that the concluding paragraph of that decision, quoted in part above, was addressed to the issues raised in the Texas Supreme Court decision. Justice O'Conner commented that "[t]he preceding

discussion also responds to the Texas court's attempt to distinguish this case as not one within ERISA's purview." *Ingersoll–Rand,* 498 U.S. at 145, 111 S.Ct. at 486. However, the actual decision of the Texas Supreme Court majority does not discuss preemption at all, nor does it make any attempt to distinguish the case that was before it from ERISA; it merely invokes ERISA—and only briefly at that—as one more piece of evidence that Texas law should fashion a public-policy exception to the employment-at-will doctrine and recognize a cause of action of wrongful discharge when an employee is fired so that the employer may evade pension obligations. *See McClendon v. Ingersoll–Rand,* 779 S.W.2d 69, 71 (Tex.1989).

Indeed, the Texas Supreme Court majority never even raised the fact that the Plaintiff was requesting compensatory and punitive damages, and it explicitly refused to express any opinion on the Plaintiff's claim of the tort duty of good faith and fair dealing. *McClendon,* 779 S.W.2d at 70 n. 1. Thus, when Justice O'Conner remarks that *Ingersoll–Rand* addresses those issues that concerned the Texas Supreme Court majority and that "the relief requested here is well within the power of federal courts to provide," she does not reference the Plaintiff's compensatory and punitive damage "relief" but rather his claim for "relief" under a wrongful discharge theory. *Ingersoll–Rand* holds that ERISA's equitable remedies are broad enough to encompass, and therefore preempt, a state-law claim of wrongful discharge; it does not hold that § 502(a) includes legal remedies of compensatory and punitive damages. Thus, the Supreme Court's later decision on the scope of ERISA'S § 502(a) finds no conflict with *Ingersoll–Rand* because that earlier case addressed substantially different issues.

For these reasons, the Court finds that the Dotsons' Motion for Summary Judgment is groundless and is hereby **DENIED.** For the same reasons, Defendant's Motion for Summary Judgment is **GRANTED.** While the Court acknowledges that this result will be frustrating the the Plaintiffs, the applicable law in this matter is not in dispute. Accordingly, the above-captioned cause of action is hereby **DISMISSED WITH PREJUDICE.**

All relief not specifically granted herein is **DENIED.** All parties are to bear their own costs. It is further **ORDERED** that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons stated in the Court's Order of this date, the above-captioned cause of action is hereby **DISMISSED WITH PREJUDICE.** Each party is to bear its own taxable costs in this matter incurred to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**