Linda ERWIN, Individually and as Representative of the Estate of Charles H. Erwin, Plaintiff,

v.

TEXAS HEALTH CHOICE, L.C. a/k/a HMO Texas, L.C., et al., Defendants.

No. CIV.A. 301CV380M.

United States District Court, N.D. Texas, Dallas Division.

Feb. 22, 2002.

Windle Turley, John T. Kirtley, III, Law Offices of Windle Turley, P.C., Dallas, TX, Quentin Brogdon, Law Office of Frank L. Branson, Dallas, TX, for Plaintiffs.

Julia J Dodd, Joseph M. Gregory, Yvette J. Mabbun, Goodwin Gruber, Dallas, TX, for Texas Health Choice LC, The medical Group of Texas, P.A., TexMed Physicians, P.A., Sierra Health Services, Inc.

John Anthony Scully, Robert A. Bragalone, Derek S. Davis, Aimee L. Guidry, Cooper & Scully, Dallas, TX, for Kaiser Foundation Health Plan of Texas, Permanente Medical Ass'n of Texas.

## MEMORANDUM ORDER AND OPINION

LYNN, District Judge.

On October 1, 2001, the Court entered an Order on Defendants' Motions for Judgment on the Pleadings,[1] in which it granted Defendants' Motions in regard to Plaintiff's common law fraud claim and denied the Motions as to the Chapter 88, vicarious liability, negligence, and conspiracy claims. The Court reserved its rulings on the remaining claims in Plaintiff's Second Amended Complaint, as Plaintiff's filing of the Complaint after briefing on the Motions for Judgment on the Pleadings had closed prevented the Court from hearing the parties' arguments on the new claims contained within the Second Amended Complaint, which included common law and statutory bad faith claims, third party beneficiary claims, and ERISA violations. The Court ordered Defendants to submit supplemental briefs on the new claims by October 22, 2001, while Plaintiff's Response was due by November 2, 2001. Contemporaneous with the Court's issuance of its October 1, 2001 Order, Plaintiff filed her Third Amended Complaint, which differed from the Second Amended Complaint only in Plaintiff's pleading of its third party beneficiary claims.[2] The parties submitted supplemental briefs by the appointed date. After reviewing the parties' submissions, the Court is of the opinion that it should GRANT Defendants' Motions for Judgment on the Pleadings in regard to Plaintiff's common law and statutory bad faith claims and third party claims (including Plaintiff's fraudulent inducement and negligent misrepresentation allegations, which are contained within the third party claims), but DENY the Motions as to Plaintiff's ERISA claim, except insofar as Plaintiff, in her ERISA claim, requests injunctive relief on behalf of other plan participants.

### I. Common Law and Statutory Bad Faith

Plaintiff alleges that Defendants are liable for both common law and statutory bad faith "by denying Mr. Erwin's claim for liver transplant services." Defendants urge that since these bad faith claims clearly "relate to" Defendants' coverage decisions, they are preempted by ERISA. Plaintiff responds (a) that the Fifth Circuit has previously held such bad

---

1. Defendants Kaiser Foundation Health Plan of Texas and Permanente Medical Association of Texas filed their Motion on May 18, 2001. Defendants Texas Health Choice, The Medical Group of Texas (f/k/a TexMed Physicians), and Sierra Health Services filed their Motion on July 11, 2001.

2. In her Third Amended Complaint, Plaintiff pled as an alternative to her third party beneficiary claims that Defendants fraudulently induced U-Haul to enter into the insurance contract and that Defendants negligently misrepresented the terms of the insurance contract to U-Haul.

faith claims not ERISA-preempted, and (b) even if the claims are preempted, the ERISA "savings clause," embodied in 29 U.S.C. § 1144(b)(2)(A), prevents preemption of bad faith claims because the claims arise under laws that "regulate[ ] insurance." Plaintiff's first argument-that Fifth Circuit precedent precludes a finding of ERISA-preemption of these claims-is inapposite. The cases Plaintiff contends are controlling precedent, *Transitional Hospitals Corp. v. Blue Cross & Blue Shield*, 164 F.3d 952 (5th Cir.1999), and *Cypress Fairbanks Medical Center, Inc. v. Pan–American Life Insurance Co.*, 110 F.3d 280 (5th Cir.1997), involve third-party providers who leveled bad faith claims against the ERISA plan administrator based on the latter's alleged misrepresentations of whether the plan in question covered a certain procedure the service provider was to render to the beneficiary. In these cases, the Fifth Circuit explicitly limited its holding of non-preemption to bad faith claims brought by third-party health care providers. *See Cypress Fairbanks*, 110 F.3d at 284; *Transitional Hosps.*, 164 F.3d at 954. In *Transitional Hospitals*, the Fifth Circuit explained this limitation in the following way:

> ERISA does not preempt [a bad faith claim] when the . . . claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage. However, a hospital's [bad faith] claims . . . are preempted by ERISA when the hospital seeks to recover benefits owed under the plan to a plan participant who has assigned her right to benefits to the hospital.

164 F.3d at 954. Thus, while a third-party health care provider can bring a bad faith claim for misrepresentation arising out of an ERISA plan administrator's allegedly false statement as to whether a beneficiary is covered by the plan, ERISA preempts bad faith claims relating to "rights of the plan beneficiaries [including third-party assignees, such as hospitals] to recover benefits under the terms of the plan." *Id.* (quoting *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 n. 20 (5th Cir.1990)). Thus, these cases actually stand for a proposition opposite from what Plaintiff claims, holding that bad faith claims are preempted when they involve allegations of an ERISA entity's wrongful denial of benefits. Because the situation in the case at hand involves a Plaintiff who is attempting "to recover benefits," not a third-party service provider alleging that an ERISA plan administrator misrepresented a beneficiary's coverage, application of this case law requires the Court to find that ERISA preempts the bad faith claims in this case.

■ Plaintiff urges, however, that ERISA's savings clause, 29 U.S.C. § 1144(b)(2)(A), which excludes from ERISA preemption "any law of any State which regulates insurance," prevents ERISA preemption of both Plaintiff's common law and statutory bad faith claims. Plaintiff argues that her statutory bad faith claim implicates a state law regulating insurance because the claim arises under Article 21.21 of the Texas Insurance Code, which "[o]n its face" is limited to entities in the insurance industry. Plaintiff also contends that her common law bad faith claim constitutes a state law that regulates insurance because a bad faith claim can only be brought against insurers.

■ The Court finds, however, that Fifth Circuit precedent has foreclosed Plaintiff's statutory and common law bad faith claims. As to Plaintiff's Article 21.21 claim, the Fifth Circuit has held that an employee's suit is not immune from preemption even though based on Article

21.21. *Ramirez v. Inter–Cont'l Hotels,* 890 F.2d 760 (5th Cir.1989); *see also Hansen v. Cont'l Ins. Co.,* 940 F.2d 971 (5th Cir. 1991). The *Ramirez* court reasoned that "a law regulates insurance when (1) it is specifically directed at the insurance industry; (2) it transfers or spreads policyholder risk; and (3) it affects an integral part of the policy relationship between insurer and insured." 890 F.2d at 763 (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48–49, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). The Court went on to explain that Article 21.21 "plainly fails to satisfy the second and third" criteria, and that therefore application of the *Ramirez* test weighed against finding that Article 21.21 was a law regulating insurance:

> [Article 21.21] does not transfer or spread policyholder risk, and ... "does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract" may in some cases entitle the policyholder to exemplary damages. At most, therefore, [Article 21.21] satisfies one of three criteria used to interpret the phrase "regulates insurance" in the ERISA savings clause.

*Id.* Contrary to Plaintiff's assertions, *Ramirez* and its progeny are still good law, as is evidenced by other district courts' recent applications of the *Ramirez* line of cases to find that plaintiffs' Article 21.21 and DTPA claims do not fall under ERISA's savings clause. *See, e.g., Cristantielli v. Kaiser Found. Health Plan,* 113 F.Supp.2d 1055, 1066 (N.D.Tex.2000) (Solis, J.) ("Claims premised on Texas state law tort theories under Article 21.21, such as those asserted by Plaintiff, are preempted by ERISA and are not salvaged by the Act's savings clause. Likewise, the Fifth Circuit has held that Plaintiff's claim under the Texas DTPA is

preempted under ERISA." (citing *Ramirez* and *Hansen* )); *Wise v. Lucent Tech., Inc. Pension Plan,* 102 F.Supp.2d 733, 746 (S.D.Tex.2000) ("[T]he Fifth Circuit has found claims brought under state law asserting a variety of common law and statutory causes of action arising from the failure to pay or misrepresentations concerning benefits available under an ERISA plan to be preempted by ERISA[, including] violation of the Texas Deceptive Trade Practices Act, and violation of Article 21.21 of the Texas Insurance Code." (citing *Ramirez* )). In accordance with these decisions, the Court finds that Plaintiff's statutory bad faith claim is preempted by ERISA.

█ Plaintiff's common law bad faith claim must also fail. Plaintiff argues that because "only an insurance company can be subject to" a common law bad faith claim in Texas, the claim is a law regulating insurance and is therefore subject to the ERISA savings provision. The Court finds, however, that the Supreme Court's decision in *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), forecloses that result. In *Pilot Life,* the Court was faced with an issue virtually identical to the one presented here: Did Mississippi's common law bad faith cause of action escape preemption under the ERISA savings clause as a law regulating insurance? *Id.* The Court determined that it did not. *Id.* The Court came to this result by applying the same multifactored analysis as that used by the *Ramirez* court: (1) "whether the practice is limited to entities within the insurance industry;" (2) "whether the practice has the effect of transferring or spreading a policyholder's risk;" and (3) "whether the practice is an integral part of the policy relationship between the insurer and the insured." 481 U.S. at 48–49, 107 S.Ct. 1549 (internal quotation marks omitted).

In reference to the first criterion, the Court found that the Mississippi law of bad faith was not directed specifically at the insurance industry. *Id.* at 50, 107 S.Ct. 1549. Although the Court determined that "the Mississippi Supreme Court has identified its law of bad faith with the insurance industry," it concluded, from a review of the evolution of the bad faith cause of action, that "the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." *Id.* Furthermore, the Court found that "the Mississippi common law of bad faith does not effect a spreading of policyholder risk." *Id.* Moreover, the Court reasoned that, while "[t]he state common law of bad faith may be said to concern 'the policy relationship between the insurer and the insured[, t]he connection to the insurer-insured relationship is attenuated at best.'" *Id.* at 50–51, 107 S.Ct. 1549. This is so because the common law of bad faith "does not define the terms of the relationship between the insurer and the insured," but instead only provides that, "whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain punitive damages." *Id.* at 51, 107 S.Ct. 1549. After reaching these findings, the Court concluded that the common law bad faith cause of action fell outside the bounds of the ERISA savings clause, as the law of bad faith was "no more 'integral' to the insurer-insured relationship than any State's general contract law is integral to a contract made in that State." *Id.*

Application of the same factors to the Texas law of bad faith yields the same result. First, the Texas common law bad faith cause of action, although utilized frequently by insurance beneficiaries, was not designed by Texas courts exclusively for that purpose. The common law bad faith claim for insurers originated relatively re-cently, in the case of *Arnold v. National County Mutual Fire Insurance Co.,* 725 S.W.2d 165, 167 (Tex.1987) ("[Plaintiff] raises the issue of whether there is a duty on the part of insurers to deal fairly and in good faith with their insureds. We hold that such a duty of good faith and fair dealing exists."). In *Arnold,* the Texas Supreme Court explained that the law of bad faith had been applied by Texas courts for some time, in myriad circumstances. *Id.* ("While this court has declined to impose an implied covenant of good faith and fair dealing in every contract, we have recognized that a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by a contract."). In support of this proposition, the *Arnold* court cited to a concurring opinion by Justice Spears in *English v. Fischer,* 660 S.W.2d 521 (Tex.1983), in which he had catalogued the different contexts in which the law of bad faith appeared:

Texas courts have read a duty of good faith and fair dealing into many types of contractually-based transactions.... Among the more familiar areas in which this duty has been recognized are: ...oil and gas, *Schlittler v. Smith,* 128 Tex. 628, 101 S.W.2d 543 (1937) (holder of executive rights owes duty of utmost fair dealing to holder of royalty interest), ... partnership, *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 120 ALR 720 (1938) (partner purchasing other's partnership owes "the highest duty of honesty and fair dealing in making the trade"), ... joint adventure, *Fitz–Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951) (joint adventurers owe one another an obligation of utmost good faith); and agency, *Kinzbach Tool Co. v. Corbett–Wallace Corporation,* 138 Tex. 565, 160 S.W.2d 509 (1942) (good faith and fair dealing required from agent in

every transaction on behalf of principal) .... A similar duty applies to all contracts governed by the Uniform Commercial Code.

*Id.* Thus, these cases make clear that the Texas common law of bad faith, like that of Mississippi, is not exclusive to insurance contracts, but instead is found in a number of different areas of the law.

Furthermore, the Texas bad faith law no more affects the spreading of policyholder risk or the relationship between an insured and his insurer than Mississippi bad faith law. Thus, the Supreme Court's analysis of Mississippi's bad faith cause of action in *Pilot Life* applies equally to the case at hand, and forecloses Texas's bad faith law from falling under the ERISA savings clause. Because the savings clause fails to shelter from preemption either the statutory or common law bad faith claims, the Court concludes that Defendants' Motions for Judgment on the Pleadings must be granted as to both bad faith causes of action.

## II. Third Party Beneficiary Claims/Fraudulent Inducement/Negligent Misrepresentation

■ In addition to adding the bad faith claims, Plaintiff's Second and Third Amended Complaints include third party claims based on Mr. Erwin's status as an alleged intended beneficiary of the insurance contract entered into between U–Haul and Defendants, which provided that Defendants would act as providers of health care coverage for U–Haul's employees. In pleading this claim, Plaintiff first seeks to exercise Mr. Erwin's right as a third party beneficiary to enforce the insurance contract by requiring Defendants to provide the benefits owed to Mr. Erwin under the contract. As Defendants contend, however, this attempt constitutes a veiled breach of contract claim, and, as

such, is preempted by ERISA. *See Hermann Hosp. v. MEBA Med. & Benefits Plan,* 845 F.2d 1286, 1290 (5th Cir.1988) (holding that breach of contract actions against insurers for failure to provide benefits under the ERISA plan are preempted by ERISA); *Kuhl v. Lincoln Nat'l Health Plan,* 999 F.2d 298, 302 (8th Cir.1993) (finding similar third-party beneficiary claim preempted). Thus, the Court concludes that it must grant judgment on the pleadings in regard to Plaintiff's third party beneficiary claim.

■ Pleading in the alternative, Plaintiff alleges that Defendants fraudulently induced U–Haul to enter into the contract "by concealing or misrepresenting the contract terms," and that Defendants negligently misrepresented the terms of the insurance contract to U–Haul. Plaintiff apparently believes she has standing to assert these claims because Mr. Erwin was an intended third-party beneficiary to the contract between U–Haul and Defendants. The Court finds, however, that Plaintiff lacks standing to bring fraudulent inducement and negligent misrepresentation claims against Defendants as third-party beneficiaries of the contract that resulted from the alleged fraudulent inducement and negligent misrepresentations. The rights of third-party beneficiaries to sue a party to the contract extend only to a cause of action for breach of contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 304 (1979) ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty."); *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex. 1999) ("A third party may recover on a contract made between other parties ... if the parties intended to secure some benefit to that third party, and ... if the contracting parties entered into the contract di-

rectly for the third party's benefit."). Because third party beneficiary status is not conferred on an individual until the contract itself is formed, it would be illogical for a third party beneficiary to be able to sue in tort for actions committed by the promisor to the promisee before the contract was actually created. Only the promisee, U–Haul, would have standing to bring such claims, as it was the alleged victim of Defendants' tortious conduct. Thus, the Court finds as a matter of law that Plaintiff does not have standing to bring her fraudulent inducement and negligent misrepresentation claims.

### III. ERISA Violations

In the last new count added in Plaintiff's Second and Third Amended Complaints, Plaintiff alleges that Defendants violated ERISA by "wrongfully withholding benefits due and owing to the Erwins under the contract of insurance." For this violation, Plaintiff seeks "the full value of the liver transplant and other benefits to which Charles Erwin would have been entitled had he lived, an injunction against defendants' denial of transplant benefits to similarly situated plan beneficiaries, attorneys' fees, costs, and any other relief to which she may be entitled." Defendants complain (a) that this ERISA claim is not viable because it should have been brought at the time the benefit was denied, (b) that monetary damages such as the "full value of the liver transplant" are not recoverable under ERISA, and (c) that the claim should be dismissed for failure to exhaust administrative remedies. The Court finds Defendants' arguments for the most part unavailing, however, and concludes that it should allow Plaintiff's ERISA claim to proceed, with the exception that the Court finds as a matter of law that Plaintiff cannot pursue the remedy of injunction against Defendants' denial of transplant benefits to similarly situated plan benefi-

ciaries. Because Plaintiff is not asking for such relief for herself, Plaintiff lacks standing to seek such relief on behalf of others.

■ First, despite Defendants' contention to the contrary, plaintiffs may bring claims for denials of benefits up to four years after the cause of action accrued. *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir.1992) (holding that since claim for benefits involved interpretation of ERISA contract, Texas's four-year limitations period for breach of contract claims applied). Because Plaintiff's cause of action began to accrue in or around June 1999, and Plaintiff added her ERISA violations claim on September 20, 2001, the claim is not barred by the four-year limitations period.

■ Additionally, the Court finds Defendants' contention that Plaintiff cannot recover the full value of the liver transplant services unpersuasive. Defendants' argument rests on its interpretation of ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), which provides that a participant or beneficiary may file suit to "recover benefits due to him under the terms of the plan," as only permitting a participant to (a) recover benefits while he is still in a position to receive the medical treatment, or (b) to receive reimbursement for expenses paid out-of-pocket by the participant for the medical services. Because Mr. Erwin is deceased, he is not in a position to receive the liver transplant allegedly covered by the insurance contract. Furthermore, since Mr. Erwin did not pay for and receive a liver transplant before he died, under Defendants' interpretation of § 1132(a)(1)(B), Plaintiff is not entitled to recover the benefits allegedly due under the ERISA plan-the value of a liver transplant-because Mr. Erwin did not himself pay for that expense.

This Court finds, however, that no case law supports Defendants' argument. Defendants contend that *Medina v. Anthem Life Insurance Co.*, 983 F.2d 29 (5th Cir. 1993), applies to this issue, because the court there characterized the plaintiff's claim to recover benefits due as a claim for reimbursement of a bill the plaintiff had allegedly paid. This Court finds *Medina* inapplicable to the issue at hand, however, because the *Medina* court's statement was only a characterization of the facts of the case; in that case, the plaintiff was, indeed, seeking reimbursement for money actually paid. The *Medina* court never attempted to restrict ERISA's allowance of a claim to recover benefits due to only those situations in which the participant paid for the medical procedure and was seeking reimbursement.

The Court bases its holding that ERISA allows Plaintiff to sue for denial of benefits owing to Mr. Erwin not only on its reading of controlling case law and the plain language of the statute, but also on its conclusion that Defendants' proffered interpretation of ERISA conflicts with the public policy rationale behind the passage of the statute, by giving ERISA plan administrators an incentive to prolong a case until the participant dies or otherwise can no longer undergo the procedure for which payment is requested.[3] For instance, assume an ERISA plan administrator wrongly refuses to cover liver transplants. A participant in the plan, who is in need of a liver transplant, institutes suit to enforce his rights under the terms of the plan. He cannot afford to pay for the transplant on his own. While the case to enforce the patient's rights under the plan is still pending, the patient dies. Defendants would have there be no remedy available for an obvious breach of the plan's terms by the plan administrator-a breach that had deadly consequences for the patient-because the patient was too poor to pay for a liver transplant on his own and his estate could not sue for reimbursement. This would provide an incentive for ERISA plan administrators to deny claims for expensive services, because the patient likely would not have enough resources to pay for the services on his own, and the plan administrator would therefore escape responsibility for paying for the services in the event the patient dies. The poorer the patient, and the more expensive the service, the higher the incentive would be for the plan administrator to withhold benefits. As a consequence, the people who need the benefits the most-those in serious condition and with few financial resources-would be the most harmed under the interpretation of ERISA that Defendants champion. The Court cannot conclude that Congress intended ERISA to bring about such a result.[4] Thus, the Court finds that Plaintiff is entitled to sue for recoupment of benefits allegedly due under the ERISA plan.

**3.** The purpose of ERISA, as stated in the text of the statute, is "to protect ... the interests of participants ... and ... beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries ... and ... providing for appropriate remedies ... and ready access to the Federal courts." 29 U.S.C. § 1001(b).

**4.** The Court is cognizant that its interpretation of ERISA may result in Plaintiff's recovery of a windfall, since, if she prevails, Plaintiff will be entitled to receive the amount

Defendants would have been required to pay Mr. Erwin's health care provider under the health plan for Mr. Erwin's liver transplant. However, the Court finds that, of the two interpretations from which the Court may choose, this is more in line with the Congressional intent of ERISA, which was, at core, to provide a unified remedy for people wrongfully denied benefits, not to strip away all remedies for such breaches that were previously available to plaintiffs.

■ Defendants last argue that Plaintiff's ERISA claim should be dismissed for failure to exhaust administrative remedies. However, as Plaintiff argues in her Response, Plaintiff pleaded exhaustion of administrative remedies in her Third Amended Complaint. When ruling on a Motion for Judgment on the Pleadings, the Court must take this assertion as true.[5] Thus, the Court finds that Defendants have put forth no persuasive arguments for granting judgment on the pleadings on Plaintiff's ERISA claim. However, the Court finds that Plaintiff may not pursue an injunction prohibiting Defendants from denying transplant benefits to similarly situated beneficiaries, because Plaintiff does not have standing to seek injunctive relief herself. Thus, in sum, the Court finds Plaintiff's ERISA count, with the exception of its request for injunctive relief on behalf of similarly situated patients, to be viable.

## IV. Conclusion

Because the Court finds that Plaintiff's bad faith and third party beneficiary claims are ERISA-preempted, the Court GRANTS judgment on the pleadings in favor of Defendants on those claims. However, the Court DENIES judgment on the pleadings on Plaintiff's ERISA claim, except in regard to Plaintiff's request for injunctive relief on behalf of other plan participants.

SO ORDERED

---

5. Defendants are free to file a Motion for Summary Judgment to dispute Plaintiff's pleading of exhaustion of administrative remedies.