UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

_____

No. 97-60814
_____

GLYNN W. ROGERS,

Plaintiff-Appellee-Cross-Appellant,

versus

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY;
ENTERGY CORPORATION COMPANIES BENEFITS PLUS
LONG TERM DISABILITY PLAN,

Defendants-Appellants-Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Mississippi

_____

March 2, 1999

Before JOLLY, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Appellants, Hartford Life and Accident Insurance Company ("Hartford") and Entergy Corporation Companies Benefits Plus Long Term Disability Plan (the "Plan"), appeal the district court's denial of their motions to set aside the default judgment entered against them. Appellee, Glynn W. Rogers, cross-appeals the district court's order setting aside that amount of the default judgment awarded for medical expenses and the prejudgment interest attributable to such expenses.

We affirm.

I

Rogers, a former employee of Entergy Corporation, sought long-term disability benefits from the Plan. Hartford insured the long-term disability portion of the Plan. Hartford denied Rogers long-term disability benefits. Rogers then filed a complaint under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), against the Plan and Hartford.

Rogers undertook to serve the Plan with process by sending a copy of the summons and complaint by certified mail, return receipt requested, to the Plan's administrator in New Orleans, Louisiana. With respect to Hartford, Rogers requested that Hartford's agent for process in Mississippi, Elizabeth Coleman, execute a waiver of service of process. She complied with this request, and the waiver of service of process was filed with the district court.

Neither Hartford nor the Plan timely answered Rogers' complaint. On Rogers' request, the district court clerk filed an entry of default. Following a hearing, the district court then entered a default judgment against both Hartford and the Plan, awarding Rogers expenses for disability benefits, medical benefits, prejudgment interest, and attorney's fees. Over a month later, Hartford and the Plan became aware of the default judgment, and promptly moved for relief. Hartford and the Plan motioned the district court to set aside the default judgment in its entirety, or, in the alternative, to set aside that portion of the judgment relating to medical benefits. The district court denied their motions to set aside the default judgment in its entirety. It decided, however, that Rogers could not recover expenses for medical treatment, and ordered the default judgment adjusted accordingly. Hartford and the Plan timely appealed; Rogers cross-appealed.

Hartford and the Plan contend that the district court abused its discretion in refusing to set

aside the entire default judgment. Hartford argues that it appeared in the action by waiving service of process, and therefore, under Federal Rule of Civil Procedure 55(b)(2) it was entitled to three days notice prior to the entry of a default judgment. Hartford never received notice. Additionally, it argues that its failure to respond timely to Rogers' complaint constituted excusable neglect, and that other equitable considerations weigh in favor of setting aside the default judgment. The Plan argues that Rogers improperly served it with process, and therefore, the district court lacked jurisdiction to enter the default judgment. It also argues that we should set aside the default judgment because venue was improper under ERISA. Finally, the Plan argues that its failure to respond timely to Rogers' complaint constituted excusable neglect.

In his cross-appeal, Rogers argues that the district court erroneously set aside that portion of the default judgment compensating him for medical expenses. According to Rogers, the award of medical expenses is necessary to restore him to the position he occupied prior to the wrongful denial of his long-term disability benefits. Rogers contends that ERISA provides for the recovery of this type of relief, and asks us to reinstate the award of medical expenses.

We discuss the arguments raised by Hartford first. We then consider the Plan's arguments. Finally, we discuss the merits of Rogers' cross-appeal.

II

We have adopted a policy in favor of resolving cases on their merits and against the use of default judgments. *See Lindsey v. Prive Corp.*, No. 97-10651, 1998 WL 820241, at *4 (5th Cir. Nov. 24, 1998); *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989)("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by the courts only in extreme situations."). This policy, however, is "'counterbalanced by considerations

of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion.'" *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990)(quoting *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970)); *see also Dolphin Plumbing Co. of Florida v. Financial Corp. of North America*, 508 F.2d 1326, 1327 (5th Cir. 1975)("The decision whether to set aside a default judgment is left to the sound discretion of the trial judge"). Accordingly, we review the district court's decision not to set aside the default judgment for abuse of discretion. *See Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir. 1992).

A

Hartford argues that the district court should have set aside the default judgment because the court entered the judgment without notice to Hartford. Rule 55(b)(2) provides: "If the party against whom judgment by default is sought *has appeared in the action*, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application at least 3 days prior to the hearing on such application." *Id.* (emphasis added). Whether the district court should have given Hartford notice of the default judgment depends on whether Hartford "appeared in the action."

We have taken an expansive view as to what constitutes an appearance under Rule 55(b)(2). We have not construed the phrase "has appeared in the action" to require the filing of responsive papers or actual in-court efforts by the defendant. *See United States v. McCoy*, 954 F.2d 1000, 1003 (5th Cir. 1992) (noting the "relatively low threshold for making an appearance for purposes of Rule 55(b)(2)'s three-day notice requirement"). Rather, to qualify as an appearance and trigger Rule 55(b)(2)'s notice requirements, the defendant's actions merely must give the plaintiff a clear indication that the defendant intends to pursue a defense and must "be responsive to the plaintiff's

-4-

formal Court action." *Baez v. Kresge Co.*, 518 F.2d 349, 350 (5th Cir. 1975); *see also Sun Bank*, 874 F.2d at 276 (noting that appearances "'include a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim'") (quoting 6 MOORE'S FEDERAL PRACTICE § 55.05(3) (2d ed.)).

According to Hartford, it made an appearance for purposes of Rule 55(b)(2). First, Hartford argues that the waiver of process executed by Coleman qualifies as a response to Rogers' formal court action. Second, Hartford contends that Rogers knew that it intended to contest the suit, because Hartford denied Rogers' claim for disability benefits, and because Rogers included "a completely frivolous count" within his complaint. Thus, according to Hartford, its waiver of process coupled with Rogers' knowledge that it intended to defend the suit entitled it to three days notice of Rogers' application for default judgment.

To decide whether Hartford's waiver of process and other actions constitute an appearance under Rule 55(b)(2), we begin by considering the procedural framework established by the Federal Rules of Civil Procedure. After filing a complaint, the Rules require the plaintiff to serve the defendant with process. *See* FED. R. CIV. P. 4(m) (requiring dismissal of a case in which the plaintiff does not accomplish service within 120 days after filing the complaint, unless the plaintiff can show good cause for not doing so). Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment. *See Broadcast Music, Inc. v. M.T.S. Enter., Inc.*, 811 F.2d 278, 282 (5th Cir. 1987) ("No person need defend an action nor suffer judgment against him unless he has been served with process and properly brought before the court."). Once the plaintiff effects service of process, however, Rule 12 is triggered and then the

defendant must answer the complaint or risk default. *See* FED R. CIV. P. 12 (requiring a defendant located within the United States who waives formal service of process under Rule 4(d) to answer the complaint within sixty days of the date that the plaintiff sent the request for waiver). This procedural framework implies that a defendant can not make an appearance for purposes of Rule 55(b)(2) until after the plaintiff effects service and the defendant becomes susceptible to default.

We note that mere acceptance of formal service of process cannot constitute an appearance for purposes of Rule 55(b)(2). If we construed the phrase that broadly, then every defendant would become entitled to notice, because the act that makes a defendant susceptible to default—acceptance of service—would also constitute an appearance. Under such a reading, a defendant could never default without also appearing in the action. The language of Rule 55, however, evidences an intent to impose a notice requirement in only limited circumstances. *See North Cent. Illinois Laborer's Dist. Council v. S.J. Groves & Sons Co. Inc*, 842 F.2d 164, 169 (7th Cir. 1988) ("Rule 55(b)(2) . . . states that notice of a default hearing is only required if the party 'has appeared in the action.' It would have been an easy task to draft the rule to specifically state that notice of a default hearing is always required, yet this was not done."). We will not interpret the phrase "appeared in the action" so broadly as to eviscerate the appearance requirement of Rule 55(b)(2).

This case, admittedly, presents a different question than whether accepting formal service of process constitutes an appearance. Hartford did not accept service of process, but waived it. Hartford argues that executing a "waiver of service of process" is different from simply accepting formal service of process because to execute a waiver the defendant must take affirmative action. We find this distinction untenable. A waiver of service of process operates as a substitute for formal service of process, allowing the plaintiff to avoid the unnecessary costs of formal service, while

ensuring that the defendant obtains notice of the suit. *See generally* 1 MOORE'S FEDERAL PRACTICE § 4.10 (3d ed.) (noting that "[t]he waiver option—providing an alternative to the often costly and time consuming service of process—was added to the Rules in 1993"). Like formal service of process, a waiver of service of process marks the point in a lawsuit after which the defendant must answer or risk default. Waiver of service of process does not in any way indicate that a defendant intends to defend. Thus, like accepting formal service of process, executing a waiver of service of process does not constitute an appearance for purposes of Rule 55(b)(2).

By executing a waiver of service of process, Hartford did not "appear[] in the action" for purposes of Rule 55(b)(2). Indeed, none of Hartford's actions rise to the level of an appearance. In this case, as Hartford admits, all of the communications between Hartford and Rogers occurred "[p]rior to the filing of the suit." *See S.J. Groves & Sons*, 842 F.2d at 170 (refusing, in case where defendant waived service of process, to find an appearance for purposes of Rule 55(b)(2) because "all of the contacts between the parties occurred before the suit was filed"). After Rogers filed his complaint, Hartford did nothing to respond to Rogers' suit, or to demonstrate its intent to defend. Accordingly, we hold that Hartford did not make an appearance such as to bring it within the purview of Rule 55(b)(2).[1]

---

[1] We find it irrelevant for purposes of Rule 55(b)(2) that Hartford "never once had the complaint and summons from which it could determine the forum in which the suit was filed, from which it could obtain the identity and name of Plaintiff's counsel, and from which it could determine the filing deadline and appropriate court for its response." By executing the waiver, Hartford forewent formal notice of the suit. If Hartford's failure to respond constituted excusable neglect, the district court could have granted relief under Rule 60(b)(1). *See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 393-94, 113 S. Ct. 1489, 1497, 123 L. Ed. 2d 74, __ (1993) (noting that Rule 60(b)(1) "permits courts to reopen judgments for reasons of . . . excusable neglect," and noting that "excusable neglect is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence"). *See Zuelzke Tool & Eng'g Co., Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 231 (7th Cir. 1991) (noting that "[i]f . . . a defaulted party

B

Hartford next argues that the district court abused its discretion in refusing to set aside the default judgment because Hartford's failure to respond to Rogers' complaint constituted excusable neglect. Although Coleman executed a waiver of service of process, and then forwarded it and the complaint by Airborne Express to Hartford's address of record, Hartford never received the delivery. Thus, its failure to respond to Rogers' complaint, Hartford argues, "resulted only from one cause: the unfortunate failure of a reputable overnight package service to deliver the complaint to it and the consequent lack of any documents which would have triggered responsive action by Hartford." In other words, Hartford explains, its failure to reply to Rogers' complaint did not result from either willful or culpable conduct. Hartford contends further that it has a meritorious defense to Rogers' complaint, that proceeding to trial on the merits would not prejudice Rogers, and that other equitable factors support setting aside the default judgment.

Federal Rule of Civil Procedure 60(b)(1) permits relief from a default judgment for "mistake, inadvertence, surprise, or excusable neglect" on a motion made within one year of the judgment. FED. R. CIV. P. 60(b)(1). Courts construe Rule 60(b)(1) liberally to ensure that they resolve doubtful cases on the merits. *See Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1459 (5th Cir. 1992) ("This court applies Rule 60(b) 'most liberally to judgments in default . . . [because] . . . [t]runcated proceedings of this sort are not favored.'") (internal citations omitted). We have directed district courts to consider three factors in determining whether sufficient grounds exist for setting aside a default judgment under Rule 60(b)(1): "(1) the extent of prejudice to the plaintiff; (2) the merits of

is lulled or induced into inaction by settlement discussions and foregoes filing an appearance and responsive pleading, relief may be sought on the basis of such conduct under the provisions of Rule 60(b)(1)—without artificial reliance on Rule 55(b)(2)").

the defendant's asserted defense; and (3) the culpability of [the] defendant's conduct." *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985); *see also Amberg v. FDIC*, 934 F.2d 681, 686 (5th Cir. 1991). These factors are not "talismanic." *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992). A district court may consider other factors, and the decision of whether to grant relief under Rule 60(b)(1) falls within its sound discretion. *See Hibernia*, 776 F.2d at 1279.

As the district court explained, this case resembles *Baez v. S.S. Kresge Co.*, 518 F.2d 349 (5th Cir. 1975). In *Baez,* we affirmed the district court's refusal to grant relief under Rule 60(b), where the defendant failed to respond timely to the plaintiff's complaint because the Postal Service lost the suit papers and never delivered them to the defendant's home office. We noted that the defendant's registered agent received a summons and complaint, but that the defendant failed to establish appropriate safeguards to ensure that the suit papers were forwarded successfully to its home office. As we explained: "[B]oth Kresge's registered agent, and its home office possessed the papers in ample time to prevent its own injury. The Postal Service, therefore, cannot be burdened with the full blame. We think rather minimal internal procedural safeguards could and should have been established which would have prevented this loss." *Id.* at 350. Thus, we concluded that because the defendant's neglect was at least a partial cause of its failure to respond, the defendant had the burden to convince the court that its neglect was excusable. *See id.* We then held that, on the facts of the case, the district court did not abuse its discretion in refusing to set aside the default judgment under Rule 60(b). *See id.*

This case also resembles *Gibbs v. Air Canada*, 810 F.2d 1529 (11th Cir. 1987). In *Gibbs*, the plaintiff served Air Canada's regional manager for the Southeastern United States, who forwarded

the complaint to its in-house counsel in Canada, via inter-company mail. Air Canada never responded to the complaint. As the Eleventh Circuit explained:

> Air Canada admits that in-house counsel never returned the phone call to him from the regional manager regarding the complaint and that the regional manager never followed up to see if the process he put in the mail in fact reached its destination in Montreal. The only excuse Air Canada offers for the failure of process to reach Montreal is that a mail clerk must have misplaced the complaint. This is not a sufficient excuse.

*Id.* at 1537. The Eleventh Circuit noted that the "minimum procedural safeguards" discussed in *Baez* "relate to some system of checking up on process to see that it has in fact reached its destination and that action is being taken." *Id.* It then held that the district court did not abuse its discretion in refusing to vacate the default judgment. *See id.*

In this case, Coleman executed a waiver of service of process, accepted the complaint, and notified Susan Page, the Senior Claims Examiner in Hartford's claims office in Atlanta, Georgia, that she had received the suit papers. Coleman also informed Page that she intended to send the papers to her immediately. Hartford never received the suit papers, but Hartford also never attempted to obtain another copy of the complaint. Thus, although Airborne Express never delivered the complaint to Hartford, Hartford's neglect—that is, its failure to establish "minimum internal procedural safeguards"—was at least a partial cause of its failure to respond. Once Hartford's registered agent received the complaint and notified Page, Hartford had a responsibility to ensure that "process . . . in fact reached its destination and that action [was] being taken." *Id.* Hartford, however, did nothing.

On these facts, the district court decided that Hartford's conduct did not constitute excusable neglect, and refused to set aside the default judgment. *Baez* and *Gibbs* provide strong support for the district court's decision, and we will not disturb that decision. The district court did not abuse

its discretion.

III

A

The Plan argues that we should set aside the default judgment against it because Rogers failed to effect proper service of process, and therefore, the district court lacked personal jurisdiction. As the Plan correctly notes, service of process must occur in accordance with Federal Rule of Civil Procedure 4. Rule 4(e)(1) provides for service "pursuant to the law of the state in which the district court is located." FED. R. CIV. P. 4(e). Rogers effected service on the Plan by certified mail to the Louisiana office of the Plan's administrator, Entergy Services, Inc., pursuant to Rule 4(c)(5) of the Mississippi Rules of Civil Procedure. Rule 4(c)(5) provides that a plaintiff may use certified mail to serve a "person outside th[e] state." *See* MISS. R. CIV. P. 4(c)(5).[2] The comments to this rule explain that the "certified mail procedure is not available to serve a person within the state." The Plan argues that, because it maintains a registered agent for service of process in Mississippi, it was "within the state" for service of process purposes. Thus, the Plan reasons that, because it was "within the state," the method of service described in Rule 4(c)(5) was not available to Rogers, and Rogers failed

---

[2]       Mississippi Rule of Civil Procedure 4(c)(5) provides:
Service by Certified Mail on Person Outside State. In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested. Where the defendant is a natural person, the envelope containing the summons and the complaint shall be marked "restricted delivery." Service by this method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked "Refused."
MISS. R. CIV. P. 4(c)(5).

-11-

to effect proper service of process.[3]

When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void and must be set aside under Federal Rule of Civil Procedure 60(b)(4). *See Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 412 (5th Cir. 1998). No Mississippi court has determined whether Rule 4(c)(5) remains an alternative method of service available to plaintiffs, after a defendant appoints an agent for service of process within the state. We, therefore, must make an "*Erie* guess" as to how the Mississippi Supreme Court would decide this issue. *See Farm Credit Bank of Texas v. Guidry*, 110 F.3d 1147, 1149 (5th Cir. 1997) (noting that when state law is silent, we must make an "*Erie* guess" as to how the state supreme court would rule). In making an *"Erie* guess" we may consult a variety of sources, including "dicta in [state] court decisions, the general rule on the issue, and the rules in other states that [the state] might look to, as well as treatises and law journals." *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 378 (5th Cir. 1997).

We begin by examining the plain language of Rule 4(c)(5). *See Russell v. State*, 94 So.2d 916, 921 (Miss. 1957) (noting that "the meaning of statutes is to be sought and ascertained from their language") (citation omitted). The first sentence of the Rule states that "a summons may be served on a *person* outside this state by sending a copy of the summons and of the complaint to the *person* to be served by certified mail, return receipt requested." MISS. R. CIV. P. 4(c)(5) (emphasis added). The Rule then states that "[w]here the *defendant* is a natural person, the envelope containing the summons and complaint shall be marked 'restricted delivery.'" MISS R. CIV. P. 4(c)(5) (emphasis

---

[3]    We note that Mississippi is the only jurisdiction involved in this case that permits service in the manner conducted by Rogers, and that Rule 4(c)(5) is the only provision of the Mississippi Rules that permits service by certified mail.

added). The Rule, therefore, distinguishes between the "person" that physically receives service, and the actual "defendant." The two terms are not synonymous.

Interpreting Rule 4(c)(5) in this way is appropriate, because this interpretation makes Rule 4(c)(5) consistent with Rule 4(d). *See Kerr-McGee Chem. Corp. v. Buelow*, 670 So.2d 12, 17 (Miss. 1995) ("When interpreting a statute, '[t]he proper way to determine the real intent of the legislature is to study the words used by it in context.'") (internal citation omitted). Rule 4(d), which is entitled "Summons and Complaint: Person to Be Served," specifically identifies the "person" the plaintiff must serve with process based on the type of defendant involved in the case. If the defendant is an "unincorporated association which is subject to suit under a common name," like the Plan, then the plaintiff must deliver "a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." MISS. R. CIV. P. 4(d)(4). Thus, when the defendant is an unincorporated association the "person" referred to in Rule 4(c)(5) is not the defendant itself, but the agent authorized to receive service on the defendant's behalf. Contrary to the Plan's argument on appeal, it is irrelevant for purposes of Rule 4(c)(5) whether the defendant itself qualifies as a "person outside th[e] state." The Plan's decision to appoint an agent for service of process in Mississippi is not germane to whether Rogers effected proper service.

Although no Mississippi court has specifically interpreted Rule 4(c)(5), we find further support for our interpretation of this Rule in a decision by a court in California. *See M. Lowenstein & Sons, Inc. v. Superior Court*, 80 Cal. App. 3d 762, 767-68, 145 Cal. Rptr. 814, 816-17 (Cal. Ct. App. 1978)*, overruled on different grounds by Johnson & Johnson v. Superior Court*, 38 Cal. 3d 243, 695 P.2d 1058, 211 Cal. Rptr. 517 (Cal. 1985). Section 415.40 of the California Code of Civil

Procedure provides that "[a] summons may be served on a person *outside this state* in any manner provided by this article or by sending a copy of the summons and of the complaint to the person to be served by first-class mail, postage pre-paid, requiring a return receipt." CAL. CODE CIV. P. § 415.40 (emphasis added). In *M. Lowenstein & Sons*, the petitioner sought to quash service of process, claiming that "service of process was invalid because it had designated an agent for service within the state." *M. Lowenstein & Sons*, 80 Cal. App. 3d at 767, 145 Cal. Rptr. at 816. The California court rejected this argument, stating:

> We conclude that although service of process could properly be made on petitioner's designated agent by any of the methods prescribed for service within the state, the agent was not the only person upon whom service could be made. Among the statutory alternatives open to [the plaintiff] was that of serving by mail a copy of the summons and complaint. Section 415.40 expressly so provides.

*Id.* at 768, 145 Cal. Rptr. at 816-17 (citations omitted). Thus, the California court held that, although the petitioner had appointed an agent for service of process, the alternative method of service provided for in section 415.40 remained available to the plaintiff. *Id.*

This case, along with a plain reading of Rule 4(c)(5), strongly suggests that if the Mississippi Supreme Court faced the issue, it would decide that Rule 4(c)(5) remains an alternative method of service available to plaintiffs, even though a defendant has appointed an agent for service of process in the state. Whether the defendant is "outside the state" or, by virtue of having appointed an agent for service of process in Mississippi, "within the state," has no bearing on service of process under Rule 4(c)(5). Thus, we hold that Rule 4(c)(5) remained "among the statutory alternatives open" to Rogers. *Id.*

In this case, Rogers effected service on the Plan's administrator in Louisiana. The Plan's administrator was located "outside" the state of Mississippi. Rogers, therefore, complied with the

service of process requirements of Rule 4(c)(5).

Moreover, Rogers complied with Rule 4(d). The Summary Plan Description distributed to Plan members identifies the Plan's administrator as its "agent for service of legal process," and provides an address in New Orleans, Louisiana. In accordance with section 502 of ERISA, the Plan chose to designate its administrator as an agent for legal service of process to avoid having service of process available through each Secretary of State. *See* 29 U.S.C. § 1132(d)(1).[4] Thus, the Plan's administrator constituted an agent authorized to receive service under Rule 4(d)(4).

In short, Rogers effected service of process in accordance with Mississippi's Rules of Civil Procedure. The district court, therefore, properly exercised jurisdiction over the Plan. Accordingly, we will not set aside the default judgment under Rule 60(b)(4).

B

The Plan also contends that we should set aside the default judgment because Rogers brought this action in a venue not proper under ERISA. As the district court stated, this contention is "patently without merit." *Rogers,* 178 F.R.D. at 481. The Supreme Court has made clear that if a party defaults by failing to appear or file a timely responsive pleading, the party waives defects in venue. *See, e.g., Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S. Ct. 1084, 1089, 4 L. Ed. 2d 1254, __

---

[4]      Section 502(d)(1) of ERISA provides:
An employee benefit plan may sue or be sued under this subchapter as an entity. Service of summons, subpoena, or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan. *In a case where a plan has not designated in the summary plan description of the plan an individual as an agent for the service of legal process, service upon the Secretary shall constituted such service.* The Secretary, not later than 15 days after receipt of service under the preceding sentence, shall notify the administrator or any trustee of the plan of receipt of such service.
29 U.S.C. § 1132(d)(1) (emphasis added).

(1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default."); *Commercial Casualty Ins. Co. v. Consolidated Stone Co.*, 278 U.S. 177, 180, 49 S. Ct. 98, 99, 73 L. Ed. 2d 252, __ (1929).

The Plan argues, however, that the Supreme Court's decisions in *Hoffman* and *Commercial Casualty* do not control the resolution of this case, because both decisions pre-date the enactment of Rule 12(h).[5] According to the Plan, Rule 12(h) "expressly requires an appearance in an action" before a party can waive a personal defense, such as venue. *See* FED. R. CIV. P. 12(h)(1).[6] In support of its argument, the Plan relies on our decision in *Broadcast Music, Inc. v. M.T.S. Enter., Inc.*, 811 F.2d 278 (5th Cir. 1987). In that case, we held that because the defendants made a voluntary appearance, and because they failed to object to personal jurisdiction, the district court did not abuse its discretion in denying the defendants' motion for relief from default judgment.

We note that Rule 12 applies only when the defendant makes an appearance. If the defendant appears, but fails to assert certain personal defenses, then under Rule 12(h) we consider these defenses waived. Rule 12(h), however, does not address the universe of situations in which a waiver of venue may occur. *Hoffman* and *Commercial Casualty* remain binding precedent: a defendant in

---

[5]     *Commercial Casualty*, decided in 1929, pre-dates the enactment of the Federal Rules of Civil Procedure. The Court decided *Hoffman* in 1960, six years before Congress amended Rule 12(h) to read as it does today.

[6]     Rule 12(h)(1) provides:
A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.
FED. R. CIV. P. 12(h)(1).

default waives any objection to venue. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("[I]f a party is in default by failing to appear . . . defects in venue are waived, a default judgment may be validly entered and the judgment cannot be attacked collaterally for improper venue."); 15 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3829 (2d ed. 1986) ("Venue is waived by a defendant who defaults"). Our decision in *Broadcast Music* does not change this conclusion. Thus, we hold that the Plan waived any objections to venue by failing to respond timely to Rogers' complaint.[7] The district court did not abuse its discretion in refusing to set aside, for reasons of improper venue, the default judgment.

C

Finally, the Plan argues, like Hartford, that its failure to respond timely to Rogers' complaint is attributable to excusable neglect. *See* FED. R. CIV. P. 60(b)(1). According to the Plan, "a finding of a willful failure to timely respond is necessary to deny a Rule 60(b)(1) motion." It argues that while its conduct was "culpable," it did not "willfully" fail to respond timely to Rogers' complaint. The Plan states that it had adopted "procedures designed to ensure that legal process [was] brought to the attention of the correct person," but that it did not respond timely because the complaint and summons were mistaken for an "internal claim file[]." As John D. Fricke, assistant general counsel for Entergy Services, Inc., explained in an affidavit:

> Although the Plan Administrator properly forwarded plaintiff's summons and complaint, along with the internal Benefits Department file to the Legal Department, the documents contained in the internal Benefits Department file were on top of the complaint and summons when the file folder was transmitted to the Legal Department. Staff personnel opened the materials, but the fact that a summons and complaint were included therein was not readily apparent because the complaint and

---

[7] Our conclusion that the Plan waived any objection to venue, makes it unnecessary for us to consider whether venue was proper.

summons were beneath the claim documentation. The materials were mistaken as an internal appellate file, which was pending resolution by Hartford.

*Rogers,* 178 F.R.D. at 482. According to the Plan, although it is not "free of fault in failing to discover the complaint," its conduct does not rise to the level of culpability or willfulness that "should prevent a court from setting aside the default judgment." Moreover, the Plan argues that, contrary to the district court's opinion, it presented meritorious defenses to Rogers' claims. Thus, the Plan asks us to reverse the district court's decision not to set aside the default judgment.

We note first that the Plan misconstrues the law with respect to Rule 60(b)(1): we do not require the district court to find a "willful" failure to respond in order to deny a Rule 60(b)(1) motion. Contrary to the Plan's position on appeal, the district court properly focused on whether the Plan acted culpably and not on whether it acted willfully. *See CJC Holdings,* 979 F.2d at 64 (noting that a focus on neglect or culpable conduct is more consistent with Rule 60(b) than a focus on willfulness). Second, as the district court held and as the facts show, the Plan failed to respond to Rogers' complaint because it carelessly mistook the summons and complaint for an internal appellate file. The Plan simply overlooked the relevant papers. *See Baez*, 518 F.2d at 350 ("We think rather minimal internal procedural safeguards could and should have been established which would have prevented this loss."); *see also Ben Sager Chem. Int'l, Inc. v. E. Targosz & Co.*, 560 F.2d 805, 809 (7th Cir. 1977) ("Neither ignorance nor carelessness on the part of a litigant or his attorney provide grounds for relief under Rule 60(b)(1)"); *Insurance Co. of North America v. S/S Hellenic Challenger*, 88 F.R.D. 545, 548 (S.D.N.Y. 1980) ("The adjuster's loss of the summons and the complaint is a mistake in the ordinary course of the internal operations of defendant's business and thus does not merit remedial relief pursuant to Rule 60(b)(1)."). For these reasons, we hold that the

district court did not abuse its discretion in refusing to grant relief under Rule 60(b).

IV

On cross-appeal, Rogers argues that the district court erroneously set aside the award for medical expenses.[8] He argues that, although our prior cases state that neither punitive damages nor mental anguish damages are recoverable under ERISA, our decision in *Corcoran v. United Healthcare, Inc.*, "left the door open to awarding such actual damages as are necessary to restore Mr. Rogers to the condition which he should have occupied." *See Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321 (5th Cir. 1992). Thus, according to Rogers, he is entitled to extra-contractual relief, in the form of medical expenses, in order to "make him whole."

Section 502(a)(3) of ERISA provides that a plaintiff may bring an action to recover "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). We have held consistently that, despite this provision, ERISA does not permit generally the recovery of extra-contractual damages. *See Weir v. Federal Asset Disposition Ass'n*, 123 F.3d 281, 290 (5th Cir. 1997) (affirming district court's dismissal of appellants' claims for compensatory and punitive damages under section 502(a)(3) of ERISA); *see also Medina v. Athem Life Ins. Co.*, 983 F.2d 29, 32 (5th Cir. 1993) (holding that section 502(a)(1)(B) does not allow the recovery of extra-contractual damages, and noting that "the statutory enforcement scheme Congress crafted for ERISA in section 502(a) did not include a private

---

[8]     Both Hartford and the Plan argue that Rogers failed to assert his ERISA claim for medical benefits before the district court, and therefore, cannot raise this argument for the first time on appeal. Our review of the record, however, shows that Rogers' argument on this issue before the district court was sufficient to permit the district court to rule on it. *Cf. FDIC v. Mijalis,* 15 F.3d 1314, 1327 (5th Cir. 1994)("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal."). Accordingly, we consider the merits of Rogers' cross-appeal.

remedy for extracontractual and punitive damages"). As Rogers suggests, however, in *Corcoran*, we assumed without deciding, that the "other appropriate equitable relief" provided for in section 502(a)(3) encompassed "damages necessary to make the plaintiff whole." *Corcoran*, 965 F.3d at 1335. In *Corcoran* we explained in some detail the reasonableness of interpreting ERISA to permit the recovery of "make-whole relief." We held, however, that even if ERISA did permit the recovery of such relief, the appellant in *Corcoran* could not recover for emotional distress and mental anguish damages.

Although our decision in *Corcoran* may have "left the door open" to the possibility of recovering certain extra-contractual damages necessary to make a plaintiff whole, the Supreme Court firmly closed this door in *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 113 S. Ct. 2063, 124 L. Ed. 2d 161 (1993). In *Mertens*, the Supreme Court rejected the petitioners' arguments that ERISA permitted a remedy calculated to make them whole, holding that ERISA does not permit the recovery of compensatory damages. As the Supreme Court stated:

> Petitioners maintain that the object of their suit is "appropriate equitable relief" under § 502(a)(3). . . . They do not, however, seek a remedy traditionally viewed as "equitable," such as injunction or restitution. . . . Although they often dance around the word, what petitioners in fact seek is nothing more than compensatory damages—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief. . . . And though we have never interpreted the precise phrase "other appropriate equitable relief," we have construed similar language of Title VII of the Civil Rights Act of 1964 . . . to preclude "awards for compensatory or punitive damages."

*Id.* at 255, 113 S. Ct. at 2068 (internal citations omitted). Thus, compensatory damages, whether extra-contractual or not, are not recoverable under ERISA.

We conclude that *Mertens* controls our resolution of Rogers' cross-appeal. Rogers may not recover medical expenses under ERISA. Accordingly, the district court properly vacated this portion

of the default judgment.

V

For the foregoing reasons, we AFFIRM the district court.