**OWENS–ILLINOIS, INC.**

v.

**T & N LTD., et al.**

**No. 2:99–CV–117–DF.**

United States District Court,
E.D.Texas,
Marshall Division.

Feb. 28, 2000.

## ORDER GRANTING RELIEF FROM DEFAULT JUDGMENT

FOLSOM, District Judge.

Before the Court is Defendant T & N Ltd.'s ("T & N") Motion for Relief from Default Judgment (docket # 54). Pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), T & N moves the Court for permanent relief from a default judgment entered against it August 24, 1999. In the alternative, T & N argues the default judgment should be vacated pursuant to Rule 60(b)(3) because of the misconduct of Plaintiff Owens Illinois' ("O–I") counsel. The Court, having considered the briefs submitted by the parties, the argument of counsel, and the testimony before the Court, hereby finds T & N's motion well taken.

### I. Background

O–I filed suit in this Court June 17, 1999 against T & N Ltd., ("T & N"). The complaint asserted claims of fraud, aiding and abetting fraud, conspiracy, violations of RICO, the federal antitrust laws, and other causes of action stemming from T & N's alleged concealment of information concerning the health risks of asbestos fibers to end-users. O–I allegedly perfected service of process on T & N by serving Ms. Elizabeth Hay, a T & N legal assistant July 14, 1999 in Manchester, England.[1] The certificate of personal service relied upon by O–I as proof of service refers to the "document annexed hereto [which] is a true copy" of the document allegedly served on Ms. Hay. According to T & N, however, the return of service filed with the authorities in England had no such document attached.

T & N failed to timely appear and answer O–I's complaint. On August 9, 1999, O–I moved the District Court Clerk for an entry of default against T & N. Having received no answer from T & N, the Clerk entered the requested notice of default. On August 18, 1999, the Court held a hearing on O–I's Application for Default Judgment and for entry of findings of fact and conclusions of law against T & N. On August 23, 1999, the Court entered a final judgment against T & N in the amount of $1,630,604,268.29 plus post-judgment interest.

In an effort to collect its judgment, on October 26, 1999, O–I filed a Motion for Injunction requiring T & N to turn over property to satisfy the judgment. A hearing on O–I's motion was held in this Court on November 24, 1999. On December 8, 1999, the Court entered an *ex parte* Turnover Order as modified by the Court, a Temporary Restraining Order, and an Order to Show Cause against T & N. On December 10, 1999, O–I mailed the Default Judgment, the Turnover Order, and requests for post-judgment discovery to T & N representatives at its parent corporation's offices in Southfield, Michigan. T & N received the documents December 13, 1999 and on December 16, 1999, filed an Emergency Motion for Relief from Default Judgment. On December 21, 1999, the Court conditionally vacated the default judgment subject to automatic reinstatement should T & N fail to prevail on the instant Motion for Relief From Default Judgment. A full hearing on T & N's motion was held in this Court February 24 and 25, 2000.

### II. Discussion and Analysis

■ Granting or denying a motion to set aside a default judgment under Federal Rule of Civil Procedure 60(b) rests within the sound discretion of the trial court. *See United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir.1985). Rule 60(b) provides the Court with "a grand reservoir of equitable power to do justice in a particular case." *See Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir.1981). The

---

1. T & N is a U.K. company. On June 17, 1999, this Court granted O–I's motion for the appointment of a process server under the terms of the Hague Convention for Service Abroad of a Judicial and Extra–Judicial Document. O–I provided the Court with a notice issued by the Supreme Court of England & Wales central office showing service was executed.

Court's discretion, however, is not unbounded; it must be exercised in light of the balance struck by the federal rules between the goal of finality and the "incessant command of the court's conscience that justice be done in light of all of the facts." *See id.* The justice function of the courts demands finality yield, in appropriate cases, so that a judgment may reflect the true merits of the cause. *See id.* The Fifth Circuit has adopted a policy in favor of resolving cases on their merits and against the use of default judgments. *See Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 938 (5th Cir. 1999); *Lindsey v. Prive Corp.*, 161 F.3d 886, 892–93 (5th Cir.1998).

Federal Rule of Civil Procedure 55(c) provides that, for "good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(e). Rule 60(b) is a "remedial provision intended to prevent injustice by allowing parties their day in court even though some technical error has occurred which would otherwise be grounds for default." *Greater Baton Rouge Golf Assoc. v. Recreation and Park Comm'n*, 507 F.2d 227, 228 (5th Cir.1975). Rule 60(b) provides five specified reasons for which relief may be granted and contains a sixth catch-all category for reasons not specifically listed.[2] While the grounds for relief under either Rule 55(c) or 60(b) are basically the same, the standards are more stringently applied when the court is considering a motion to vacate a default

judgment under Rule 60(b). *See One Parcel of Real Property*, 763 F.2d at 183.

T & N argues it should be granted relief from the default judgment because its failure to answer was due to (1) mistake, inadvertence, surprise, or excusable neglect as provided for under Rule 60(b)(1); (2) the misconduct of an adverse party under 60(b)(3),[3] or (3) other reasons that justify relief from the operation of the judgment under 60(b)(6). The Court finds T & N entitled to relief under 60(b)(1) and therefore declines to address the issues raised by T & N's request for relief under 60(b)(3) and 60(b)(6).[4]

### III. Excusable Neglect under Rule 60(b)(1)

■ Rule 60(b)(1) provides relief from a default judgment that results from mistake, inadvertence, surprise, or excusable neglect. Fed.R.Civ.P. 60(b)(1). Rule 60(b)(1) is understood to encompass situations in which the movant's failure to respond is attributable to his own negligence. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 394, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993).[5] Because Congress provided no guideposts for determining what categories of neglect are excusable, the *Pioneer* Court emphasized an equitable inquiry "taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498. Although the concept of excusable neglect is "somewhat elastic," it generally excludes gross careless-

---

**2.** Fed.R.Civ.P. 60(b) provides that on motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or vacated, or is no longer equitable; and (6) any other reason justifying relief from the operation of the judgment.

**3.** T & N argues O–I made serious misrepresentations to the Court during the August 18, 1999 Hearing on O–I's Motion for Default Judgment. T & N alleges O–I falsely represented to the Court that it had no notice of the dangerous effect its Kaylo asbestos insulation products had

on end-users. Additionally, T & N takes exception to O–I's characterization of T & N's corporate restructuring as an attempt to divest itself of its U.S. assets.

**4.** While the Court need not address the misrepresentation issue in reaching its conclusion and makes no findings in that regard today, it notes these allegations are disturbing and further compels the conclusion a trial on the merits is needed in this case.

**5.** Although decided in a bankruptcy context, the Court's interpretation of "excusable neglect" is specifically discussed in terms of Rule 60(b) and rests upon the plain meaning of those words. It is clear the Court's ruling applies in non-bankruptcy contexts as well. *See Stutson v. United States*, 516 U.S. 193, 194–96, 116 S.Ct. 600, 602–03, 133 L.Ed.2d 571 (1996).

ness, ignorance of the rules, or ignorance of the law. *See id.* at 392, 113 S.Ct. at 1496.

▮▮▮ The Fifth Circuit has directed district courts to consider three factors in determining whether sufficient grounds exist for setting aside a default judgment under Rule 60(b)(1): (1) the extent of prejudice to the plaintiff; (2) the merits ˙of the defendant's asserted defense; and (3) the culpability of the defendant's conduct. *See One Parcel of Real Property*, 763 F.2d at 183. These factors are not "talismanic" and the court may consider other factors including whether the motion was made within a reasonable time, whether the interests in deciding the case outweighs the interest in the finality of the judgment, whether the public interest is implicated, and the amount of money at stake. *See Hibernia Nat'l Bank v. Administracion Central Sociedad*, 776 F.2d 1277, 1280 (5th Cir.1985); *Seven Elves*, 635 F.2d at 402–03. With these factors in mind, the Court turns to the facts of the instant case.

### A. Prejudice to the Plaintiff

▮▮▮ If the plaintiff will suffer prejudice by reopening the action, the court may deny the movant's motion for relief. *See Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. The prejudice must involve more than the mere possibility of prejudice from delay inherent in every case. *See Hibernia Nat'l Bank*, 776 F.2d at 1280. Likewise, delay in the collection of a judgment by a plaintiff or requiring a plaintiff to litigate the merits of the claim is insufficient prejudice to allow a default judgment to stand. *See One Parcel of Real Property*, 763 F.2d at 183.

O–I argues it will be prejudiced if the default is set aside because T & N is in the process of a corporate restructuring which may effect its ability to collect upon a judgment. The Court finds this argument without merit. There is no evidence in the record that T & N is attempting to move assets to avoid paying a potential judgment in this case. The Court is also convinced that if O–I genuinely believed T & N was attempting to divest itself of its U.S. assets, O–I would not have waited 62 days after securing the de-

fault judgment before it sought judicial assistance in collecting its judgment.

▮▮▮ The Court concludes there is no indication O–I will suffer any prejudice other than that which is inherent in litigation. Therefore this factor weighs in favor of setting aside the default judgment.

### B. Meritorious Defense

▮▮▮ To merit relief, T & N must demonstrate that it has a meritorious defense such that the outcome of the litigation could be different if it were allowed to proceed to trial on the merits. *See Azzopardi v. Ocean Drilling & Exp. Co.*, 742 F.2d 890, 895 (5th Cir.1984). Equity will not set aside a default when the defendant can not raise the possibility of successfully defending suit because, in that case, there is no injustice. *See id.* At this stage T & N need not prove that it⸱ will likely succeed on the merits; rather, it need only establish that the evidence submitted, if proven at trial, would constitute a defense. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir.1993).

▮▮▮ T & N has presented several meritorious defenses to O–I's claims. First, T & N asserts evidence routinely introduced against O–I and credited by juries and courts in asbestos personal injury cases nationwide demonstrates that O–I knew of the harmful effects of asbestos on end-users. (Hanly Aff. ¶ 25–27). Further, T & N offers numerous documents, including medical studies commissioned by O–I that, according to T & N, proves O–I's long-standing knowledge of the harmful effects of asbestos on end-users.[6] T & N also contends all of the claims for which the Court found T & N liable on default are barred by laches and the applicable statute of limitations. (Defendant's Original Answer ¶ 132).

The requirement of a meritorious defense is only intended to ensure that the Court's order vacating the judgment is not an exercise in futility. The Court is satisfied that T & N has met its burden. This factor weighs

---

6. The Court notes that O–I disputes T & N's assertion that the medical evidence establishes

its knowledge of the harmful of effects of asbestos on end-users.

in favor of setting aside the default judgment.

### C. Culpability of T & N's Conduct

When the Defendant's negligence was at least a partial cause of its failure to respond, it has the burden of convincing the court its negligence was excusable. *See Rogers,* 167 F.3d at 939 (citing *Baez v. S.S. Kresge Co.,* 518 F.2d 349, 350 (5th Cir.1975)). The Court is justified in refusing to relieve the defendant from a default judgment resulting from its failure to establish "minimum internal procedural safeguards." *See id.*

The very heart of O–I's argument is that T & N's default should be upheld because it failed to establish minimum internal procedural safeguards to prevent a default in this case. O–I stresses T & N's legal department has no written procedures to ensure that an answer is timely filed. O–I also suggests that T & N's procedures are inadequate because they fail to provide a method of responding to U.S. commercial complaints. Moreover, O–I suggests that T & N has a history of defaults.

T & N asserts it has well established procedures in place to assure lawsuits filed against it are timely answered and defended. (Tr. at 89). T & N claims this system, although not written, is performed by persons within T & N's legal department each of whom has years of experience with the procedures. (Crichton Dep. 16:10–16, 37:6–13, 193:1–2, 194:5–20; Hay Dep. 78:13–16). Further, T & N maintains that its system has allowed it to successfully respond to over 150,000 lawsuits. (Tr. at 90). T & N contends this suit was an aberration and that O–I's characterization of it as a recidivist defaulter is unwarranted.

O–I directs the Court to *Rogers v. Hartford Life,* 167 F.3d at 933. In *Rogers,* Hartford's agent executed a waiver of service, accepted the complaint, and then forwarded it by Airborne Express to Hartford's address of record. Hartford's agent notified the home office that the documents were received and would be sent out immediately. When the documents failed to arrive as promised, Hartford did not attempt to locate the package or to obtain another copy of the complaint. Consequently, Hartford failed to timely answer the complaint. In upholding the district court's refusal to set aside the default judgment, the Fifth Circuit found once Hartford acknowledged receipt and undertook to forward the documents, it had a responsibility to ensure they reached their intended destination. *Id.* at 939.

T & N directs the Court to *McGarrah v. Kmart Corp.,* No. 3:97–CV–2386G, 1998 WL 760275 (N.D.Tex. Oct.22, 1998). In *McGarrah,* the court found Kmart's procedures consisting of receiving the mail, date stamping it, and then delivering it to the responsible department was an adequate well-established internal procedure. *Id.* at *1 n. 5. The *McGarrah* court acknowledged that the plaintiff's complaint was lost or misplaced somewhere at Kmart's corporate headquarters causing Kmart to default. *Id.* at *1. In the final analysis, however, the *McGarrah* court set aside Kmart's default finding excusable neglect despite the obvious human error.

O–I's reliance on *Rogers,* is misplaced. In finding the Defendant's negligence inexcusable, the *Rogers'* Court was persuaded by the fact that Hartford's registered agent orally informed them she had received the complaint and was forwarding it immediately. The *Rogers'* Court found the failure to follow up on the delivery or to request a duplicate complaint an unexcusable procedural defect. The facts in this case are much more like the *McGarrah* case relied on by T & N. Like Kmart, T & N has well established procedures in place for the prompt forwarding of all complaints. The *McGarrah* Court recognized that even when a company has well established procedures in place, human error will occasionally result in lost or mislaid items. While the breakdown of the procedure or failure to follow procedures may be neglectful, the *McGarrah* Court found it to be the kind of excusable neglect to which Rule 60(b)(1) was intended to apply.

The evidence before the Court suggests there is a well-established system in

place at T & N.[7] T & N's internal procedures have allowed it to timely respond to more than 200,000 cases filed against it since July 1976. (Hanley Aff. ¶ 4). In 1999 alone T & N's legal department processed 32,371 United States claims. (Tr. at 135). Although the procedures employed in T & N's legal department have not been reduced to writing, they are understood to exist and are followed everyday to successfully process lawsuits originating from the United States, England, Scotland, Northern Ireland, Australia and India. (Tr. at 89, 94).

The evidence before the Court also establishes that despite T & N's procedures, the O–I complaint served upon Ms. Hay was lost.[8] In this case, Ms. Hay accepted the complaint on behalf of T & N and, because the lawsuit was an "unusual suit," she passed it on to her supervisor, Andrea Crichton. (Tr. at 108, 128, 131; Crichton Dep. 30:5–13). Ordinarily, Mrs. Crichton would have made a copy of the complaint and then faxed it to Mr. Cullins, an attorney with T & N's parent corporation, Federal Mogul, and to Mr. Zamoyski, Federal Mogul's general counsel. (Tr. at 138–38; Crichton Dep. 73:2–7). Mrs. Crichton stated she would have also verified receipt of the fax. (Crichton Dep. 73:2–7). On this day, however, Mr. Cullins was already present in T & N's office. Mrs. Crichton handed the complaint to him along with several other papers. When Mr. Cullins looked at the papers two days later, the O–I complaint was not among them. (Tr. at 154).

The Court is of the opinion that the mislaid compliant was the product of isolated human error, rather than a result of a prolonged and systemic failure by T & N to establish minimum procedural safeguards. First, the Court notes T & N's system is reliable, allowing it to answer thousands of complaints each year in a timely fashion. Second, T & N's customary procedure was not followed in this case because Mr. Cullins happened to be in the office on the day in question. Third, the Court notes that no system can provide for every possible contingency, nor does the law require T & N to have a fool-proof system. The evidence before the Court suggests T & N's internal procedures adequately provide for the handling of unusual complaints. (Tr. at 93). Finally, the evidence in this case suggests that a lost or mislaid complaint has never before served as the basis of a default by T & N.[9]

Based on the evidence in this case, the Court cannot conclude T & N lacks minimum internal procedural safeguards for ensuring lawsuits against it are timely answered. Therefore, this factor does not weigh against the Court's ability to set aside the default judgment.

### D. Other Factors

#### 1. Good Faith

There has been no allegation, nor any evidence presented suggesting T & N's failure to file an answer was in bad faith. T & N's employees testified they did not deliberately hide, conceal, misplace, throw away or destroy the complaint. (Tr. at 140, 155, 167). Nor is there any indication T & N used the default judgment as a delay tactic. This factor weighs in favor of setting aside the default judgment.

---

7. T & N's system consists of separating out lawsuits filed according to country of origin and the type of claim involved. These suits are then sent to different destinations where different legal departments and counsel file answers. In some cases, files are opened in T & N's legal department, in some cases the complaint is entered into a database and then forwarded to an attorney, and in other cases, the complaint is faxed or forwarded to corporate counsel in the United States. (Tr. at 98–107).

8. T & N argues there is no proof it actually received service of process. The Court, having heard the testimony of Mr. Edmunds, the bailiff who personally served the summons and complaint, finds T & N's argument without merit. The Court is satisfied the summons and complaint were properly served on Ms. Elizabeth Hay, who is authorized to receive service on behalf of T & N, in Manchester, England, June 14, 1999.

9. O–I has argued that T & N is a recidivist defaulter. This argument is misleading. The *Parker* suit that T & N failed to timely answer was the result of the complaint being entered in the wrong database. The *Eurofi* and *Nkosi* cases in which T & N defaulted resulted from the error of counsel. Finally, the *Whitehead* default occurred because the Plaintiff in that case sent the complaint to the wrong address.

### 2. Length of Delay

 In deciding a motion to set aside a default, a court may consider whether the defendant acted expeditiously to correct its default. *See Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir.1992). T & N first received notice that the default judgment had been entered against it on December 13, 1999, when it received the Turnover Order, the Temporary Restraining Order, and the Order to Show Cause entered on December 8, 1999. T & N's motion to set aside the default judgment was filed three days after learning of the O–I complaint and its subsequent default. T & N's three day response time is certainly reasonable. *See Seven Elves*, 635 F.2d at 403 (motion filed 12 days after the discovery of the judgment was within reasonable time as that term is used in Rule 60(b)); *see also Meridian Savings Assoc. v. Sadler*, 759 F.Supp. 336, 338–39 (N.D.Tex.1990)(motion brought within reasonable time under Rule 60(b) since it was filed within one year of the entry of default and immediately after the defendant was financially able to retain counsel). Additionally, on December 20, 1999, T & N entered into a stipulated agreement with O–I which set forth a swift discovery schedule, provided for a good faith mediation, and assurances O–I that T & N would, if required by the Court, honor its judgment. T & N also provided a letter of credit in the amount of one hundred million dollars to provide O–I with additional security. Therefore, the Court finds this factor weighs in favor of setting aside the default judgment.

### 3. Amount of Money Involved

██ In *Seven Elves*, the Fifth Circuit reversed the decision of the district court declining to set aside a default judgment in the amount of $250,000 finding "the amount of money involved is very great, itself militating in favor of a full trial on the merits" 635 F.2d at 403. Other Courts have likewise been influenced by the size of the judgment at issue.[10] In the instant case the Court is asked to set aside a judgment in the amount of $1.6 billion dollars. Such a high dollar amount unquestionably weighs in favor of setting aside the default judgment.

### 4. Public Interest Factors

Courts do not treat the three factors identified in *One Parcel of Real Property* as exclusive; instead, they rely on other relevant factors including whether the public interest is implicated. *See In the Matter of Dierschke*, 975 F.2d at 184. The Court is mindful of the implications of upholding the default judgment in this case. A judgment of this size would have a devastating impact on T & N, its shareholders, and its 50,000 employees. Further, T & N suggests a judgment this size would affect its ability to compensate individual asbestos end-user plaintiff's, many of whom have had litigation pending for several years. These considerations weigh in favor of setting aside the default judgment.

### IV. Conclusion

The Court, having carefully weighed the facts of this case, finds O–I will not be prejudiced by vacating the default judgment and that T & N has asserted several viable defenses to O–I's complaint. Further, the Court finds the failure of T & N to timely file an answer was the result of isolated human error. There is no evidence T & N acted in bad faith; rather, upon hearing of its default, it immediately contacted the Court and took action to cure the default. The Court also finds the large amount of money involved in this case and the public's interest are power-

10. *See Enron Oil Corp.*, 10 F.3d at 97 (holding district court abused its discretion is refusing to vacate a $257 million dollar judgment); *Hoover v. Valley West D.M*, 823 F.2d 227, 230 (8th Cir.1987)(holding district court did not abuse its discretion in relieving the defendant from a default in part because of the size of the award); *Sony Corp. v. Elm State Elec.*, 800 F.2d 317, 320 (2d Cir.1986)(stating a court may consider whether the entry of default would lead to a harsh result or to the entry of a large money judgment); *Granville Gold Trust–Switz. v. Commissione Del Fullimento*, 924 F.Supp. 397, 403 (E.D.N.Y.1996) *aff'd*, 111 F.3d 123 (2d Cir.1997)(granting relief in part because the enormity of the judgment weighed in favor of a trial on the merits); *Liberty National Bank and Trust Co. v. Yackovich*, 99 F.R.D. 518, 521 (W.D.Penn.1982)(vacating at $75,000 default judgment in part because matters involving large sums of money should not be determined by default if avoidable).

ful equities favoring setting aside the default judgment. Therefore, it is

**ORDERED** that T & N's motion to set aside the default judgment under Federal Rule 60(b)(1) is **GRANTED.**