Tawana L. BENNETT. Plaintiff,

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, d/b/a Cigna Group Ins., et al., Defendants.**

No. 3:04–CV–1281–B.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 23, 2005.

Order Denying Reconsideration
April 21, 2005.

Richard G. Danner, Jr., Law Office of Richard G. Danner, Dallas, TX, for Plaintiff.

Cole B. Ramey, Crouch & Ramey, Dallas, TX, for Defendants.

## *MEMORANDUM ORDER*

BOYLE, District Judge.

Before the Court is the Motion of the Defendants, Life Insurance Company of North America ("LINA") and Patti Holt ("Holt") (collectively, "Defendants") for Summary Judgment. The Defendants served the Plaintiff, Tawana Bennett ("Bennett"), with the motion on December 23, 2004 pursuant to the joint submission procedures set forth in the June 21, 2004 Scheduling Order. On February 1, 2005, the Court denied the Plaintiff's request for enlargement of time to respond to the

motion. Having reviewed the pleadings and evidence on file, the Court GRANTS the Defendants' motion for the reasons that follow.

### I. Factual and Procedural Background[1]

#### A. *Procedural Background.*

Tawana Bennett ("Bennett") filed this lawsuit against the Defendants in Texas State Court on May 14, 2004. Bennett seeks actual and punitive damages for claims alleged under the Texas Insurance Code and the Texas Deceptive Trade Practices Act ("TDPTA"). Bennett has alleged the following claims: (1) breach of the implied duty of good faith and fair dealing, (2) breach of express and implied warranty, and (3) fraud and unconscionable conduct. To date, Bennett has never asserted any ERISA claims. (Orig.Pet.). The Defendants removed the case to the Federal District Court for the Northern District of Texas on June 11, 2004. Defendant LINA asserted ERISA preemption in its answer. (Orig.Answer). On July 15, 2004, Bennett acknowledged in her response to Holt's Motion to Dismiss that the Plan is governed by ERISA and that ERISA preemption applies, ("Response to Motion to Dismiss at 3"), but maintains that her claims against LINA do not arise under ERISA because LINA "is the insurance company providing the benefits under the plan." (*Id.*).

In compliance with the joint submission procedures set forth in the June 21, 2004 Scheduling Order, Defendants served Bennett with the instant motion for Summary Judgment on December 23, 2004, thus making her deadline for serving her response January 12, 2004, twenty days after the motion was served. Bennett failed to

---

1. The facts are derived from the parties' pleadings and on the evidence contained in the summary judgment record. Unless characterized as a contention by one of the parties, these facts are undisputed.

respond in a timely manner, and, after reviewing pleadings from both parties, the Court denied Bennett's motion to enlarge time to respond to the motion for summary judgment on February 1, 2005.[2]

## B. Factual Background.

### 1. Bennett's Participation in the Plan.

During the relevant time period in 2003, Bennett was a customer service employee of Solomon Smith Barney ("SSB"), a subsidiary of Citigroup, Inc. ("Citigroup"). Some SSB employees are provided disability insurance coverage from Cigna Life Insurance Company of New York ("CLINY") through Citigroup's ERISA employee benefit plan (the "Plan"). (Motion at 2). In her status with SSB, Bennett, a "Class 1" employee, was entitled to certain disability benefits under the terms of CLINY Policy Number NYK 2260 (the "Policy"). (Id. at 2; Exh. A, Affidavit of Richard M. Lodi ("Lodi Affidavit"), App. 1–3 and 5–59).

As a Class 1 employee under the Plan and the Policy, if Bennett were to become "totally disabled," she would be automatically entitled to receive disability benefits in the amount of 60% of her base monthly earnings, less other benefits, up to a maximum of $2,500 a month. (Lodi Affidavit, App. 13, 32, 34, 37–38, 299, 324). Under the Plan, an insured is "totally disabled" if she is "unable to perform all the essentials of [her] occupation." However, the individual will not be considered "totally disabled" for a period in excess of twenty-four months unless "because of Injury or Sickness, [she is] unable to perform all the essential duties of any occupation for which [she] is or may reasonably become

qualified based on [her] education, training or experience." (App.43, 45).

CLINY is designated as the Plan's claims administrator. (App.17). CLINY, however, delegated its role as claims administrator to LINA. In this capacity, LINA is authorized to "receive, review, administer and adjudicate" SSB employees' long-term disability benefits claims. (App.1–3). Bennett's claim was one such claim. (Id.). As the acting claims administrator, LINA is the fiduciary for both adjudicating benefits claims and for making decisions on benefit claims appeals. (App.7, 17). The Plan specifically states that all decisions made by the claims administrator "shall be binding on participants and beneficiaries to the full extent permitted by law." (Id.).

### 2. Bennett's Claim for Long Term Disability Benefits.

Some time in early 2003, Bennett submitted a claim for disability benefits under the Plan and Policy. As the basis of her claim, she averred that symptoms of pain, dizziness and memory difficulties disabled her. (App.330–32, 336–37). More specifically, in Original Petition, Bennett alleges that she became disabled as of February 6, 2003 as a result of "systemic lupus, erythematosis, vertigo, hypertension and other diseases." (Plaintiff's Original Petition 2–3). Bennett asserts that she became incapable of continuing her position as a telephone customer service representative at SSB. (Id.). In that position, Bennett was required to be capable of "sitting, seeing, hearing, and, occasionally, standing or walking." (App.331, 333–35). LINA made a number of requests asking Bennett to submit medical evidence corroborating her claim for disability benefits. (App.76, 80, 115, 126, 127, 146, 254, 255, 271, 273,

---

**2.** The Court notes that there is also a pending motion to dismiss for failure to state a claim, filed jointly by the defendants on July 27, 2004.

293, 322). Bennett supplied some medical information, but included within her submission LINA's request for records. (Motion at 4).

### 3. *Bennett's Lack of Sufficient Medical Documentation.*

Bennett submitted records in support of her claim from four separate physicians: (1) a rheumatologist, Dr. Don Cheatum, (2), an internist, Dr. Mahendra Kakarla, (3) an ear/nose throat specialist, Dr. J.R. Williams, and (4) a hand specialist, Dr. Olayinka Onguro. In addition to these four physicians, Bennett later submitted records from a rheumatologist she began seeing after making her claim, Dr. Imran Iqbal. (Motion at 5; *see also generally,* App. 60–338). In her records, however, there was no medical evidence validating her claims of systemic lupus, "erythematosis" or hypertension or her assertions that medical conditions made her incapable of performing her unique job duties. (*Id.*). Additionally, Bennett did not submit any medical records in support of her claims of pain and dizziness.

Notably, although Bennett asserted in her claim that Drs. Cheatum and Williams advised her not to continue working in February 2003, she did not offer any documentation of these assertions. (App.213, 336). Finally, Bennett did not submit any evidence that her medical conditions had worsened at the time of her claim, and she had complained of the same conditions for the previous nine years, according to her documentation. *See generally, (Id.).*

Bennett stated in her claim that "stress at work" was a possible cause of her medical issues. (App 213). She also said that her lupus affected her hormones (App. 336), and that the combined afflictions affected her brain (App.291), but all of these assertions were made without supporting documentation. *See generally* (App.).

Notably, when Bennett had made similar complaints in 2002, she ultimately went back to work. (App.72).

The first of the four physicians who originally provided LINA with medical evidence regarding Bennett's condition was Dr. Cheatum, who gave LINA notes for office visits with Bennett on January 14, 2003 and March 14, 2003. In his notes, Dr. Cheatum commented that she complained of fatigue and morning stiffness that lasted all day. He commented, however, that Bennett had a good range of motion, normal chemistry, and tested negative on the lupus-related blood tests. Ultimately, he prescribed Bennett medication. Dr. Cheatum did not, however, provide any evidence that Bennett could not perform the duties of her job. (App. 149–153).

Like Dr. Cheatum's notes, Dr. Onguro's likewise did not provide evidentiary support for a diagnosis of a restriction or limitation upon Bennett's ability to work in her sedentary job. Dr. Onguro examined Bennett on January 29, 2003. During that examination, Bennett complained of numbness and tingling in her hand which she had allegedly suffered from for nine years. Ultimately, Dr. Onguro stated that Bennett was healthy, and noted that her hand musculature was of normal strength and that it had not atrophied. (App.154–160).

Additionally, Dr. Williams, who examined Bennett in December 2002 and in March 2003, noted that the results of the testing he completed were "perfectly normal." He diagnosed her with "dizziness of uncertain etiology," and recommended treatment and transdermal patches. Like the others, Dr. Williams did not advise Bennett that she could not work or that she needed to restrict her work. (App. 174–194).

LINA also reviewed the medical records of an internist who examined Bennett in May, 2003, Dr. Kakarla. This doctor reviewed Bennett's medical history and requested laboratory tests. Dr. Kakarla also recommended that Bennett visit a rheumatologist, but did not diagnose Bennett with any condition or provide any job restrictions. (App.216–220).

Finally, LINA reviewed the records of Dr. Iqbal, who examined Bennett on June 18, 2003. At the time, Bennett said that she had a history of lupus, and that she was experiencing weakness, numbness, fatigue, and tingling. Although no tests were conducted, Dr. Iqbal found that Bennett could not work. Dr. Iqbal's records were devoid, however of any evidence substantiating a need for a restriction on Bennett's ability to perform the duties of her mostly sedentary position. (App.164–167).

#### 4. *LINA's Denial of Bennett's Claim and Bennett's Appeal.*

LINA denied Bennett's claim for long-term disability benefits on June 19, 2003, and provided her with a written explanation, specifically citing her failure to meet her burden to show that she met the Policy's definition of total disability. LINA also included an explanation of her right to appeal the decision under ERISA, which she did. (App.143–147). Bennett was told that she could supply additional evidence in support of her disability claim. Her sole additional document was a one-page submission Dr. Williams which repeated his diagnosis, and added that he supported Bennett's "wish for long-term disability." (App.124, 126–27, 135–36).

LINA denied Bennett's appeal, communicating its denial in a letter to her dated July 16, 2003. (App.121–22, 123, 134).

Following the denial of Bennett's claim, LINA received documentation from Dr. Iqbal in the form of office notes from a July 30, 2003 visit, and LINA again asked Bennett to submit evidence. (App.76, 80–81, 115). After she did not, LINA repeated its denial of her claim on January 21, 2004. (App.73–75).[3] Under the Plan, the claims administrator (LINA) has the right, to the extent legally permissible, to interpret policy provisions, determine eligibility for coverage, and make findings of fact. (App.7, 17).

The Defendants now seek summary judgment on the entirety of the Plaintiff's claims against them for the following reasons (1) Defendant Holt is not a proper defendant in this ERISA lawsuit, and even if she were a proper party, she did not abuse her discretion in denying benefits to Bennett, (2) Defendant LINA is not a proper defendant in the lawsuit, and (3) Bennett's state law claims are preempted by ERISA, and even if they are not, LINA's denial of ERISA benefits to Bennett did not constitute abuse of discretion. (*Id.*).

## II. ANALYSIS

### A. *Legal Standards.*

#### 1. **Summary Judgment Standard.**

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,

---

**3.** Subsequently, LINA produced Bennett's ERISA file to her counsel. (App.68–69, 76– 77).

91 L.Ed.2d 202 (1986). The burden rests on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little*, 37 F.3d at 1075.

Once the movant meets its burden, the non-movant must show that summary judgement is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

 Having failed to timely respond to the Defendants' motion, Bennett has not designated specific facts showing that there is a genuine issue for trial and is therefore relegated to her unsworn pleadings, which are not summary judgment evidence. *Bookman v. Shubzda*, 945 F.Supp. 999, 1002 (N.D.Tex.1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). While Bennett's failure to oppose summary judgment does not permit the Court to enter a "default" judgment, the Court is allowed to accept the evidence presented by the Defendants as undisputed. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir.1988); *see also Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (holding that a party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim). For these reasons, the Court will accept the Defendants's evidentiary assertions as undisputed. *Id.* at 458 (noting that it is not the court's duty to sift through the record in search for evidentiary support for a party's opposition to summary judgment).

### 2. ERISA Preemption.

### a. Complete Preemption and Conflict Preemption.

 The Fifth Circuit has recognized two types of preemption under ERISA: complete preemption and conflict preemption. *McClelland v. Gronwaldt*, 155 F.3d 507 (5th Cir.1998). Complete preemption serves as an exception to the well-pleaded complaint rule in that ERISA may occupy a particular area such that "any civil complaint raising this select group of claims is necessarily federal in character." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336–37 (5th Cir.1999) (quoting *Metro Life*, 481 U.S. at 64–65, 107 S.Ct. 1542) (internal quotations omitted). ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a), completely preempt any state cause of action seeking the same relief, thus a claim falling within § 1132(a), regardless of how artfully pled as a state

claim, will be treated as a federal claim. *Id.* at 337 n. 7. (citations omitted). Because such a claim raises a federal question, it will provide a basis for the Court's exercise of removal jurisdiction from state court. *Id.*

On the other hand, conflict preemption, also known as ordinary preemption, arises under U.S.C. 1144(a) and applies to state law claims which fall outside the scope of ERISA's civil enforcement provisions. *Copling v. The Container Store,* 174 F.3d 590, 595 (5th Cir.1999). Such claims are governed by the well-pleaded complaint rule and, therefore, conflict preemption, in and of itself, fails to establish federal question jurisdiction over those claims. *Id.*

The Fifth Circuit has summarized the interplay between the issues of preemption and jurisdiction as follows:

> [W]hen a complaint raises state causes of action that are completely preempted, the district court may exercise removal jurisdiction; but when a complaint contains only state causes of action that the defendant argues are merely conflict preempted, the court must remand for want of subject matter jurisdiction. When a complaint raises both completely preempted claims and arguably conflict preempted claims, the district court may exercise removal jurisdiction over the completely preempted claims and supplemental jurisdiction [under 28 U.S.C. § 1367] over the remaining claims.

*Id.*

To determine whether the claim is subject to ordinary preemption under ERISA, the Fifth Circuit uses a two-pronged approach. *See McClelland,* 155 F.3d at 517. The first step is to determine whether the claim is subject to ordinary preemption under 29 U.S.C. § 1144(a). *Id.* "Ordinary preemption is a necessary—but obviously not a sufficient—precondition to complete preemption in the context of ERISA." *Id.* Therefore, a claim that is not subject to ordinary preemption cannot be completely preempted. The second step, then, assuming the claim is subject to ordinary preemption, is to determine whether it is completely preempted; i.e. whether the claim seeks the same relief as provided for in ERISA's civil enforcement provisions in § 1132(a). *See id.; see also Giles,* 172 F.3d at 337.

### b. Ordinary Preemption Under 29 U.S.C. § 1144(a).

As noted, the instant motion raises the issue of ERISA preemption. 29 U.S.C. § 1144(a) states that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan..."[4] ERISA § 514(a), 29 U.S.C. § 1144(a). The Supreme Court defines the phrase "relate to" very broadly. It is to be "given its broad common-sense meaning, such that a state law 'relates to' a benefit plan, 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (citations omitted). If a state law relates to a benefit plan, then ERISA preempts it. *Hogan v. Kraft Foods,* 969 F.2d 142, 144 (5th Cir.1992).

Two characteristics unify those state law causes of action which have been preempted by ERISA: (1) these claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) they

---

**4.** ERISA preemption is also governed by 29 U.S.C. §§ 1144(b)(2)(A) and (b)(2)(B), but these provisions are inapplicable to this case.

directly affect the association among the traditional ERISA participants—the employer, the plan and its fiduciaries, and the participants and beneficiaries. *Mem'l Hosp. Sys. v. Northbrook Life Ins.*, 904 F.2d 236, 245 (5th Cir.1990); *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir.), *reh'g denied*, 95 F.3d 56 (5th Cir.1996).

### c. *LINA's Decision Should Be Reviewed For Abuse of Discretion.*

In analyzing a claim for benefits allegedly due under an ERISA plan, the district court reviews the plan administrator's determination for abuse of discretion when the plan expressly gives the administrator discretionary authority. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir.2004). Moreover, even in cases where such authority is not conferred, the court reviews any *factual determinations* made by the administrator for abuse of discretion. *Id.* (citations omitted).

### B. *Bennett's State Law Claims Against the Defendants are Preempted by ERISA.*

■ The Defendants contend that Bennett's state law claims against them are preempted by ERISA. (Motion at 10; *see also generally* Plaintiffs Orig. Pet.). As discussed previously, all of Bennett's claims against the Defendants arise under state law. *See generally* (Plaintiff's Orig. Pet.). Bennett has admitted, however, that "[t]he plan in question is an employee welfare benefit plan which is governed by ERISA." (Response to Motion to Dismiss at 3). Thus there is no question that Bennett, as an ERISA participant, has the right to: (1) seek recovery of benefits under the plan, (2) enforce her rights as provided by the Plan, or (3) obtain clarification of any possible future benefits to which she may be entitled under the Plan.

*Id.* 29 U.S.C. § 1132(B). The law is clear, however, that "Section 514(a) of ERISA, 29 U.S.C. § 1144(a), expressly 'supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Rozzell v. Security Serv., Inc.*, 38 F.3d 819, 821 (5th Cir.1994) (citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)) (citations omitted).

More specifically, Courts have held that ERISA completely preempts the specific state law claims Bennett alleges. In *Metropolitan Life Ins. Co. v. Taylor*, and 481 U.S. 58, 62–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), the United States Supreme Court held that ERISA completely preempted certain state law claims, and in that case found that ERISA preempted an employee's common law tort and contract claims when the employee sought benefits under the employer's disability policy. The Fifth Circuit in *Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311, 1315 (5th Cir.1994) applied the reasoning in *Taylor* to find that a former employee's claims for demotion and wrongful termination were similarly preempted., even though ERISA was only asserted as a defense. Bennett's common law claims for breach of contract and torts of negligent misrepresentation and fraud to recover benefits from her employer's ERISA plan are preempted by ERISA section "29 U.S.C. § 1132(a)(1)(B) which provides an exclusive federal cause of action for the resolution of such claims," in effect " 'recharacterizing' " the claims as federal claims. *Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir.1989) (citations omitted).

■ Bennett's claims against LINA for breach of the duty of good faith and fair dealing and for alleged TDTPA violations are likewise preempted. In *Ramirez v. Inter–Continental Hotels*, 890 F.2d 760,

the plaintiff brought suit against his former employer and the employer's insurance carrier, alleging only state law claims for breach of contract, breach of fiduciary duty, negligence, and violations of the TDTPA. The Fifth Circuit held that the plaintiff's "efforts to collect his medical benefits" were related to his employer's plan, and thus preempted by ERISA. *Id.* at 762–63. Furthermore, although ERISA provides a savings clause for statutes which "regulate insurance," the Fifth Circuit in *Ramirez* joined three other circuits in "holding that ERISA preempts state statutes that provide a private right of action for the improper handling of insurance claims." *Id.* at 764; *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Thus, ERISA preempts Bennett's claims for breach of the duty of good faith and fair dealing and for alleged TDTPA violations. *Id.; see also Pilot Life*, 481 U.S. 41, 56–57, 107 S.Ct. 1549; *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 979 (5th Cir.1991) (holding that claims for misrepresentation, fraud and TDTPA violations brought pursuant to section 21.21 of the Texas Insurance Code were barred by ERISA even if the result left the plaintiff with no adequate remedy for fraud under ERISA); *Tatum v. Special Ins. Serv.*, 82 Fed.Appx. 877, 2003 WL 22922302 (5th Cir.2003) (finding that employee insurance policy purchased by employer was a plan governed by ERISA and thus outside the scope of ERISA's safe harbor provision); *Erwin v. Tex. Health Choice, L.C.*, 187 F.Supp.2d 661, 665 (N.D.Tex.2002) (Lynn, J.) (holding that "Fifth Circuit precedent [had] foreclosed [the] Plaintiff's statutory and common law bad faith claims.").

Thus, all of Bennett's state law claims are preempted by ERISA, and the defendants' motion for summary judgment on those claims is GRANTED.

## C. Amendment of Bennett's Complaint to Include the Plan as a Defendant Would Be Futile.

The Court set October 15, 2004 as the deadline for Bennett to amend her pleadings. In her July 27, 2004 response to Holt's motion to dismiss, Bennett requested permission to join the plan as a defendant and drop defendant Holt from the lawsuit, but maintained that her state law claims against the insurer were proper. (Resp. to Motion to Dismiss at 3). Bennett has failed, however to file either a motion to amend or a proposed amended Complaint with the Court in the seven-month period since she has acknowledged certain deficiencies in her Complaint. Moreover, as discussed in the procedural history section, Bennett failed to timely respond to the Defendants' motion for summary judgment, constituting undue delay under Federal Rule of Civil Procedure 15(a).[5] Furthermore, the facts set forth in the factual background above demonstrate that there is no genuine issue of material fact as to whether Bennett is entitled to benefits under the Plan—those same facts would be required to support an ERISA claim against the Plan itself. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir.1990). There is no genuine issue of material fact—based on the evidence, the Court finds that LINA, as a plan administrator specifically vested with the Bennett's claim for disability benefits, did not abuse its discretion in finding that

---

**5.** Although the Court denied Bennett's motion for enlargement of time in which to respond, she filed a brief on February 14, 2004 entitled "Plaintiff's Motion in Response to Defendant's Motion for Summary Judgment," (Doc. No. 20), which the Court struck on February 18th, 2004. Out of an abundance of caution, the Court reviewed Bennett's response, and finds that the information included therein would not alter the Court's analysis.

Bennett was not entitled to long term disability benefits under the Plan. Viewing all of the evidence in the light most favorable to Bennett, the Court finds that there is insufficient evidence upon which a reasonable jury could return a verdict for Bennett. *Munoz v. Orr,* 200 F.3d 291, 302 (5th Cir.2000); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Bennett's claims, whether plead as ERISA claims against the Plan or as state law claims against the administrator and insurer, fail as a matter of law. The Court therefore DENIES any motion to dismiss Bennett may have made because of undue delay and futility of amendment pursuant to Rule 15(a) and GRANTS the Defendants' motion for summary judgment as a matter of law.

### III. Conclusion

For the reasons set forth in this order, it is ORDERED that the Defendants' Motion for Summary Judgment is hereby GRANTED. Judgment is entered in favor of the Defendants.

**SO ORDERED.**

### ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

On March 28, 2005, Plaintiff filed a motion for this Court to reconsider the ruling made in its Memorandum Order of February 24, 2005 granting Defendants' motion for summary judgment. Rather than addressing the merits of that Memorandum Order, Plaintiff essentially complains about this Court's February 1, 2005 order denying Plaintiff's motion for leave for an extension of time to file a summary judgment response, and its February 18, 2005 order striking Plaintiff's response and supporting appendix that were filed without leave of Court.

Plaintiff contends that the Court should, pursuant to Rule 60(b)(1), reconsider Defendant's motion for summary judgment,

together with Plaintiff's response and supporting papers, because her failure to file a timely response to Defendant's motion for summary judgment was the result of inadvertence, mistake, or excusable neglect. However, to obtain relief under Rule 60(b)(1), Plaintiff must "demonstrate a defense that probably would have been successful." *Optimal Health Care Servs., Inc. v. Travelers Ins. Co.,* 801 F.Supp. 1558, 1560 (E.D.Tex.1992). Plaintiff has not even attempted to demonstrate that she would have survived summary judgment absent her alleged inadvertence or excusable neglect. More importantly, in its February 24, 2005 Memorandum Order granting Defendants' motion for summary judgment, the Court stated:

> Although the Court denied Bennett's motion for enlargement of time in which to respond, she filed a brief on February 14, 2004 entitled "Plaintiff's Motion in Response to Defendant's Motion for Summary Judgment," (Doc. No. 20), which the Court struck on February 18th, 2004. Out of an abundance of caution, the Court reviewed Bennett's response, and finds that the information included therein would not alter the Court's analysis.

(February 24, 2005 Memorandum Order at 13, n. 5). Thus, the Court would have reached the same decision even if Plaintiff's response had been timely filed, mooting Plaintiff's arguments raised in her Motion for Reconsideration. Accordingly, Plaintiff's Motion for Reconsideration is DENIED.

SO ORDERED.